

**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*copy (8*

---

*U.S. Customs House - 7th Floor*
*2nd and Chestnut Streets*
*Philadelphia, PA  19106*

May 25, 1999

CV00-1255
FILED
SCRANTON
JUL 1 4 2000

The Honorable Benjamin L. Cardin
U.S. House of Representatives
540 E. Belvedere Avenue
Suite 201
Baltimore, MD 21212-3750

       **RE: THORNTON, Douglas Henry**
          **Register Number - 37461-118**

Dear Congressman Cardin:

    We have reviewed your letter concerning Mr. Douglas Henry Thornton, an inmate confined at the United States Penitentiary, Lewisburg, Pennsylvania. Mr. Thornton seeks your assistance regarding the difficulty he has experienced with the quality of health care while incarcerated. Specifically, he complains of symptoms of hot, cold and sharp needle like feelings in his lower back and legs which he alleges he received from an injury on February 16, 1999, while working in Food Service.

    According to Mr. Thornton's medical record, he did suffer an accident in Food Service on February 16, 1999, and was referred to the local community hospital for evaluation. He was examined by a staff Neurology Specialist who reported a normal exam. The safety pin instrument used to examine Mr. Thornton is an American Medical Association approved method for neurological testing and diagnosing. This instrument is used as an external device and does not penetrate the skin. Further, diagnostic x-rays of the spine and a computerized axial tomography (CAT) scan of his head were performed and reported as normal.

    Mr. Thornton is receiving appropriate treatment by the Clinical Director regarding his medical complaints. We ensure you that your constituent is being provided quality health care consistent with community standards.

MAY 2 8 1999

2

We trust the above information has addressed your concerns.  If we can be of further assistance, please contact me.

Sincerely,

David M. Rardin
Regional Director

From; Douglas H. Thornton
Reg No. ........... Cell 235
............. .......... ....
at Lewisburg ...........

Date; July 5, 2000

To; Donald Romine .........
at ... Side, Penitentiary
Lewisburg, Pennsylvania 17837

Re;

    As of July 5, 2000, Commencing with the Composition of ... letter. I will stop or discontinue eating for the following reasons. I have repeatedly over the last few months or ... . Filed Complaints to medical staff member here at USP-Lewisburg. About medical problems and their various symptoms and effects that I have and are to this date July 5, 2000 experiencing. medication that I have received from medical staff, has not stop the spots and patchs thats appearing and increasingly growing on my body skin, and its itching soreness grievous. I have over the course and duration of the last few months and more. made and filed complaints to medical staff members here at USP - Lewisburg about the problems I been having and still are having with urinary frequency and pain at times. See BOP request for administrative remedies that I filed on this matter 213367 F... and 213367 R1. I unsuccessfull attempted to resolve this matter with staff here at USP Lewisburg and bring this matter to a authorita... Conclusion. The medical problems I have cited mention or stated in this letter has not been effective, Incompetent

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

*26 B*

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Douglas H. Thornton    27461-118    SHU    USP-Lewisbu

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST** Something is causing spots to appear on parts of my b
These spots has change from light color to darker color and from small
to large. Their causing itching irritation soreness. These spots are app
ing in areas where I was stabed in 1994. I have been compl
ing to medical staff about these spots and their effects for over a few
months. Medical staff has been given me treatment for a rash. This
treatment has not stop the spots from appearing or their effe ts.
I have also complainted to SHU about my bladder over active urinar
I was given some medication to take for this march of this year, a
I am still experiencing urinary to much. I Now have sharp
feeling in and around my rectum terminal to my penis. The medication
I took to control my urinary d
was just no.    I am experiencing dizzy spels at tim
I must now break part

May 18, 2000
DATE                                                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

DATE                                                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _213167-F1_

CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

**ADMINISTRATIVE REMEDY #213367-F1**
**PART B - RESPONSE**

You have filed a Request for Administrative Remedy in which you request medical assistance for a number of complaints. Specifically, you have stated that you have spots on your skin, too frequent urination, pain extending from your penis to your rectum, and head and neck pain.

Investigation into this matter reveals that you have been seen by medical staff a number of times during the course of the past few months for a variety of complaints. In addition to several visits with our consultant psychiatrist, you were seen by our staff physician in February for urinary frequency. At this time you were prescribed a two-week trial of Ditropan with instruction to return if symptoms persisted. Your record does not indicate any further complaints of urinary frequency until you notified the Clinical Director during Special Housing Unit rounds on May 25, 2000. At this time, you were scheduled to be seen in the Health Services Unit on June 1, 2000.

On March 9, 2000, you were seen by the Clinical Director and diagnosed as having a non-incarcerated inguinal hernia. You were prescribed a non-steroidal anti-inflammatory and a hernia truss. Additionally, you have been seen for migraine headaches and examined by the consulting optometrist.

On June 1, 2000, you were seen in the Health Services Unit and diagnosed with urinary frequency and dermatitis. You have indicated to the staff physician that the Ditropan was effective in the past in limiting your urination. You have been prescribed a sixty-day course of this medication. Additionally, you were prescribed Atarax to control the itching associated with your dermatitis. You have been scheduled to return to the Health Services unit for further diagnostic testing to include a skull x-ray to assist in diagnosing the cause of your head pain, and a skin biopsy to help identify the cause of your dermatitis.

Medical staff will continue to make rounds daily in the Special Housing Unit; please discuss any additional concerns with them.

Based on the above, it is our determination that your request has already been granted. If dissatisfied with this response, you may appeal to the Regional Director, United States Federal Bureau of Prisons, Northeast Regional Office, United States Customs House - Seventh Floor, Second and Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

6/10/00
_____     _____
Date                        Donald Romine, Warden

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

*26 B*
*342*

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Thornton Douglas Henry            37461-118      B-122      USP Lewisburg
      LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.        UNIT         INSTITUTION

Part A– INMATE REQUEST  On February 16, 1999, I received injuries to my back and other parts of my body. After my name was doing the food service call 4-o'clock pm out count, I try to set down in one of the Chairs at the first ~~table~~ table. The Chair broke causing me to fall and hit the floor. I have been experiencing pain in my b and legs. It hurt me to set down at times and to ~~walk~~ walk. medication I have received from the medical department do not stop the pain or the hot, cold sharp like feeling I feel in my back and legs. I was Not treated in a professional way by medical staff at the out side hospital. I was stuck all over my body with a safety pin by a Nerve Doctor who said his name was Doctor Corn, he did not clean the pin. He just took it out of his ~~bag~~ and stuck me all over my body with it, asking me If I feel it. See BP-8 attachment for other ill treatment I received.

DATE  2-25-99                                    _[signature]_
                                              SIGNATURE OF REQUESTER

Part B– RESPONSE

_[circular stamp/marking]_

3-17-99                                    _[signature]_
DATE                                      WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

_ ORIGINAL: RETURN TO INMATE _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   CASE NUMBER: _____

                                                            CASE NUMBER: _____
Part C– RECEIPT

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.        UNIT         INSTITUTION

SUBJECT: _____

**Admin. Remedy No.: 180511-F1**
**Part B - Response**

### ADMINISTRATIVE REMEDY RESPONSE

In your Request for Administrative Remedy, you express concern over an accident that you suffered in Food Service on February 16, 1999. The accident you refer to occurred shortly after the 4 o'clock count when the chair you attempted to sit down on broke, causing you to hit the floor. You claim that you continue to experience pain in your back and legs, and that the medication you have received from the Health Services staff is ineffective. You further claim that you were not treated in a professional manner by the medical staff at the outside hospital and allege that the doctor performing the neurological test on you did not clean the instrument he used during his examination.

A review of Health Services records indicates that you did, in fact, suffer an accident on February 16, 1999. Immediately following your accident, you were evaluated by a staff physician here at USP Lewisburg. Subsequent to his examination, you were referred to the local hospital for further testing and evaluation. While at the local hospital, the Emergency Room Physician ordered a number of tests, including x-rays of your spine and a CAT scan of your head, all of which were found to be normal. In addition to the above, the Emergency Room Physician asked a neurologist or nerve specialist (as you refer to him) to further evaluate you. As part of his exam, an instrument is used to check if you are suffering from any neurological deficit due to your accident. This instrument is used externally on the surface of your skin and does not require sterilization.

Based on the above, your request for administrative remedy is denied, in that all doctors involved with your care responded in a professional manner. In addition, the treatment you received was consistent with community standards. In the event that you continue to suffer pain, please sign up for sick call so that a clinician can evaluate you. If you are dissatisfied with this response, you may appeal to the Regional Director, U. S. Bureau of Prisons, Northeast Regional Office, U. S. Customs House -7th floor, 2nd & Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

Donald Romine, Warden                    3-17-99
_____                 _____
Donald Romine, Warden                    Date

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball–point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Thornton Douglas H    37461-118    B-122    USP Lewisburg
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A—REASON FOR APPEAL I am still experiencing the following symptons - Hot Co__
needel like feeling in my leg mosty and lower back. I am experiencing tigh__
sorenee, sharp like feeling in my lower back when I walk, set down and
when I get up. when I stand for a while I feel pressure in my lowe__
__ack and sorenee. I have see about ever physician assistant here on the __
meny sick calls I have been on. All they tell me is that the x ray look gim__
I dont no what the x rays show. I am experiencing all of the above
symptons. The neurologist that treated at the out side hospital on Febru__
1999, after he ran some test on me with some instrumeuts. He fish around
in his medical bage until he found a safety pin. He stuck me with this
safety pin about 15 times, he also took the pint of the pin a ran it
across my stomach real hard. He did not clean this pin befor he stuck
me with it, nor did he put any thing on the meny place he stab me
with the safety pin. I hold ask he a few times what the hell was
he trying to do because he was stabing me so hard with the pin
I now have a rash growing on my body where I was stuck with thes
__n. I need to see a doctor who no about back problem and injuries

March 23 1999
    DATE    Douglas Doug J. Thornton
        SIGNATURE OF REQUESTER

Part B—RESPONSE

_____    _____
    DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE
    CASE NUMBER: 180511-R1

Part C—RECEIPT
    CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT:

**THORNTON, Douglas**
Reg. No. 37461-118
Appeal No. 180511-R1
Page One

BP-9 180511-F1

### Part B - Response

In your appeal, you complain that you experience hot/cold needle like feelings in your leg and lower back. You claim that, although the Physicians Assistants at USP Lewisburg told you that your x-rays look alright, you experience tightness and soreness in your lower back. You complain that when the Neurologist specialist examined you, he stuck you with a dirty safety pin. You now complain of a rash growing on your body.

An investigation into your complaint reveals that you on February 16, 1999, you suffered an accident in Food Service. Immediately following your accident, you were evaluated by the medical staff. You were referred to the local community hospital for further evaluation which included examination in the Emergency room by a staff Neurologist who reported a normal examination. The safety pin instrument used to examine you by the Neurologist is an approved American Medical Associated method of examination to determine any neurological deficits. This instrument is used as an external device and is not used to penetrate the skin or require any sterilization. Further, you received x-rays of your spine and a CAT scan of your head, which were also reported as normal.

Medical staff advise that you are receiving appropriate medical treatment. If you have a rash on your body, you should request sick call for evaluation and treatment if indicated. Nothing you complained about warrants any administrative relief. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: April 16, 1999

DAVID M. RARDIN
Regional Director

**U.S. Department of Justice**

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | THORNTON DOUGLAS HENRY | 37461-118 | A-200 A-325 | USP Unit Lewisburg |
|-------|------------------------|-----------|-------------|---------------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL** I AM STILL TO THIS DATE EXPERINCING SOME OF THE SYMPTONS THAT I HAVE MENTION IN OTHER PART OF THIS ADMINISTRATIVE REMEDY. I STILL EXPERINCING SHARP NEEDEL LIKE FEELING IN MY LOWER BACK AND LEGS. NOT AS MUCH AS WHEN THE INCIDENT TOOK PLACE ON FEBRUARY 16 1999

I AM STILL TO THIS DATE , ARE EXPERINCING PAIN AND OTHER SYMPTONS THAT I HAVE MENTION IN OTHER PART OF THIS REQUEST FOR FOR ADMINISTRTIVE REMEDY.

I AM STILL EXPERINCING SHARP NEEDEL LIKE FEELING IN MY LOWER BACK AND LEGS AT TIMES WHEN EVER I TRY TO DO ANY FORM OF EXERCISE THESE SYMPTONS GET WROST.

| _April 20 1999_ | _[signature]_ |
|-----------------|---------------|
| DATE | SIGNATURE OF REQUESTOR |

**Part B—RESPONSE**

RECEIVED Y 3 1999

| | |
|---|---|
| DATE | GENERAL COUNSEL |

ORIGINAL: RETURN TO INMATE                 CASE NUMBER: _NOS11-_

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

Administrative Remedy No. 180511-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you request for medical care for a back injury
you received in February.  You also state that you were
mistreated by the medical staff at the local hospital after the
injury.

Review of your medical record and discussion with USP Lewisburg
medical staff indicate you were evaluated for an injury to your
back and head at a local hospital on February 16, 1999.  The
record indicates you were evaluated by the Emergency Room
physician and consultant neurologist.  The recod indicates you
had a CT scan of the brain and MRI of the Lumbar Spine on
February 16, 1999.  The record reflects that Health Services
staff have provided you with appropriate evaluation and treatment
in accordance with Bureau policy.  Should you have further
problems or discomfort, you should make your needs known to the
Health Services staff by utilizing routine sick call procedures.

There is no indication of mistreatment by the community physician
alleged utilizing a non-sterile pin to test your responses to
painful stimuli.  The physician utilized a standard approved
technique which is external and does not required a sterilized
instrument.

Accordingly, the Central Office concurs with the findings and
decisions of the Institution and Regional Office, the medical
care you are receiving at this time is appropriate.  Your Central
Office Administrative Remedy Appeal is denied.


6-23-99
DATE

WENDY J. ROAL, ADMINISTRATOR
NATIONAL INMATE APPEALS

Response to Inmate Request to Staff

Inmate Name: Douglas Henry Thornton
Inmate Reg. No.: 37461-118
Quarters: SHU-334

In your Inmate Request to Staff, dated March 14, 1999, you alleged that one of our outside medical consultants had inflicted an injury to your body while conducting a neurological examination using a safety pin.

A review of your medical record indicates that after February 16, 1999, you have been examined and evaluated for a total of seven times by our staff clinicians. Your record also reveals during your consultations with our medical staff, you have never complained nor received treatment for injuries caused by puncture wounds. Furthermore, subsequent to February 16, 1999, there is no written documentation in your medical record showing evidence of past or present puncture wound anywhere on your body. The medical staff had informed me that a neurological examination is customarily and traditionally conducted using a pointed instrument to determine the integrity of your neurological system.  If you think you need further medical care, please contact the floor physician assistant assigned in your unit.

I trust I have been responsive to your concerns.

_Donald Romine_                                    3-31-99
Donald Romine, Warden                          Date
USP Lewisburg

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball–point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

| From: | THORNTON DOUGLAS HENRY | 37461-118 | A-320 | U.S.P. LEWISBURG |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A—REASON FOR APPEAL    ( SUBJECT MATTER METAL DETECTORS AND THEIR RADIATION LEVEL )

THE SUBJECT MATTER OF THIS REMEDY IS THE METAL DETECTORS THATS BEING AT THE UNITED STATES PENITENTIARY INLEWISBURG PENNSYLVANIA

THE EFFICE OF THE RADIATION THAT COME FROM THESE DETECTORS ARE UNKOWN AND THEIR EFFICE ON THE INMATES THAT THEY ARE USE ON .

OCT- 27-1999
_____
DATE

_____
SIGNATURE OF REQUESTER

Part B—RESPONSE

RECEIVED
NOV - 1 1999
ADMINISTRATIVE
REMEDY BRANCH

_____
DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

**Administrative Remedy No. 193830-A1**
**Part B - Response**

This is the response to your Central Office Administrative Remedy Appeal regarding the metal detectors at USP Lewisburg.

After reviewing information on metal detectors, there is no credible evidence that the use of these devices endangers your health or safety.

Accordingly, we concur with the findings and decisions of the Warden and Regional Director. Your appeal is denied.

_12/09/99_
Date

Harrell Watts, Administrator
National Inmate Appeals

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | MR. THORNTON DOUGLAS HENRY | 37461-118 | A-320 | U.S.P.LEWISBURG PA |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A— INMATE REQUEST Due to security practices use that the united states penitentiary in Lewisburg pennsylvania. I am forced to go through metal detectors more then a hundred times a week. 21,times a day just to go to work and to eat,this is not counting the tim I go through these metal decectors going to the yard or law library etc. These metal DETECTOR S product mageticfileds. All electormagnetic matters generate some level of radiation.Some of the metal detectors mageticfileds are generating on hight level then other. I do believe that the largeamount of exposure more then a hundred times a week are unhealthy practices  and the cause of some of the medical problmes that I been experienceing. I have been a prisoner at the united states penitentiary in Lewisburg Pa. a few times in the past when there was not so meny metal detectors  or when a inmat was not force to go through them a hundred times a week. I was not experiencing the kin of physical and mental discomfort or body chemistry changes that I been experience . I return to mmx U.S.P.Lewisburg on Nov 3-1998 as a parole violator. only after I enter th general population and commencing going through the metal detector for a bout a month did I begin to experienaing the kind od medical problems that I been experiencing Ther nothing here that was not here at U.S.P.Lewisburg the other times I been here as a fede prisoner other then the metal detectors .

August – 17 –1999
DATE

SIGNATURE OF REQUESTER

Part B- RESPONSE

*Rec'd 8/19/99*

9/14/99
DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this respon*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: __183850-F1__

CASE NUMBER: _____

Part C- RECEIPT

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

**Admin. Remedy No.: 193830-F1**
**Part B - Response**

## ADMINISTRATIVE REMEDY RESPONSE

In your request for Administrative Remedy, you state that you are forced to go through metal detectors more than one hundred times a week and you believe that exposure to the magnetic fields that the detector emits is causing you medical problems.

The manufacturer of the metal detectors and the health department were both contacted regarding your concerns. It was revealed that all scientific evidence indicates no medical problems or hazards connected with walking through metal detectors or from the use of hand held metal detectors. For security reasons, all metal detector procedures will remain the same throughout this institution.

Based on the above information, the relief you request has been DENIED. If you are dissatisfied with this response, you may appeal to the: Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House - 7th Floor, 2nd & Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

9/14/99
_____
Date

_____
Donald Romine, Warden

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: | THORNTON DOUGLAS HENRY | 37461-118 | A-320 | LEWISBURG PA |
| LAST NAME. FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A—REASON FOR APPEAL

Due to security practice thats use at the united states penitentiary in Lewisburg Pennsylvania . I am force to walk through metal detectors more then a hundred times a week about 30 times a day. Officials at the united states penitentiary in Lewisburg Pennsylvania in their response to this request for administrative remedy on the PB-9 level stated that the metal detectors has no effects a person health in any way. People body are not the same people body chemistry are not the same ever one that walk through these metal detectors are not effected the same so more then other etc. In a freedom of information request that I filed to the office of the Director of the federal bureau of prison,requesting FOR INFORMATION on the metal detectors that being use on the inmates at the federal penitentiary in Lewisburg Pennsylvania Dated August 6-1999. In a reply letter that I received from the freedom of information section in Washington D.C. states that the office of securtiy technology  (OST) section has advised them the metal detectors that being at the federal penitentiary in Lewisburg  Pennsylvania do generate safe level of RADIATION  and that the metal detectors can not be turn up or down to cause them to generate more radiation then the other. see atteched freedom of information request reply letter dated August 26- 1999 request case number 99-11940. There is no way that a person can be subjected to these metal detectors more the a hundred times a week an not be effected by the radiation

9 -   DATE 21-1999                                          SIGNATURE OF REQUESTER

Part B—RESPONSE

DATE                                                        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                          CASE NUMBER: 193830-R

Part C—RECEIPT

CASE NUMBER: 193830-R
LEW

Return to: _____
LAST NAME. FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**THORNTON, DOUGLAS**
Reg. No. 37461-118
Appeal No. 193830-R1
Page One

---

### Part B - Response

In your appeal, you contend that you are experiencing medical problems at USP Lewisburg, caused by the metal detectors that you stated you are forced to go through.  You assert the detectors emit radiation which is causing you health problems.

An investigation into your complaint reveals that your concerns and not well found.  The manufacturer of the metal detectors and the health department were contacted regarding your concerns. The accumulated dose is very minimum and scientific evidence indicates no medical problems or hazards connected with metal detectors.  You referenced an attachment to your administrative appeal.  There was no attachment to the administrative appeal filed with this office.  If you have any medical concerns, please sign up for sick call in the Health Services Department. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons.  Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.


Date: October 21, 1999              DAVID M. RARDIN
                                    Regional Director

From: **THORNTON DOUGLAS HENRY**    37461-118    A-320    **LEWISBURG PA**

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

## Part A—REASON FOR APPEAL    ~~XXXXXX~~

Due to security practice thats use at the united states penitentiary in Lewisburg Pennsyl vania . I am force to walk through metal detectors more then a hundred times a week about 30 times a day. Officials at the united states penitentiary in Lewisburg Pennsylvania in their response to this request for administrative remedy on the FB-9 level stated that th e metal detectors has no effects a person health in any way. People body are not the same people body chemistry are not the same ever one that walk through these metal detectors are not effected the same so more then other etc. In a freedom of information request that I filed to the office of the Director of the federal bureau of prison,requesting FOR INFORMATION on the metal detectors that being use on the inmates at the federal penit entiary in Lewisburg Pennsylvania Dated August 6-1999. In a reply letter that I xxxxxxxx received from the freedom of information section in Washington D.C. states that the office of security technology (OST) section has advised them the metal detectors that being at the federal penitentiary in Lewisburg Pennsylvania do generate safe level of RADIATION and that the metal detectors can not be turn up or down to cause them to generate more radiat ion then the other. see attached freedom of information request reply letter dated August 26- 1999 request case number 99-11940. There is no way that a person can be subjected to these metal detectors more the a hundred times a week an pot be effected by the radiation

DATE 21-1999    SIGNATURE OF REQUESTER

## Part B—RESPONSE

SIGNATURE    DATE    REGIONAL DIRECTOR

Reg. No. 37461-118
Appeal No. 193830-R1
Page One

## Part B - Response

In your appeal, you contend that you are experiencing medical problems at USP Lewisburg, caused by the metal detectors that you stated you are forced to go through. You assert the detectors emit radiation which is causing you health problems.

An investigation into your complaint reveals that your concerns and not well found. The manufacturer of the metal detectors and the health department were contacted regarding your concerns. The accumulated dose is very minimum and scientific evidence indicates no medical problems or hazards connected with metal detectors. You referenced an attachment to your administrative appeal. There was no attachment to the administrative appeal filed with this office. If you have any medical concerns, please sign up for sick call in the Health Services Department. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

DAVID M. RARDIN
Regional Director

Date: October 21, 1999

DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**FEDERAL BUREAU OF PRISONS**
**INJURY REPORT – INMATE**

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| Lewisburg | Thornton Douglass | 47481-118 |

| 4. Injured Duty Assignment | 5. Injured's Duty Hours | 6. Date and Time of Injury |
|---|---|---|
| Food Service Dining Room | AM 030   630 PM | 2-16-99 |

| 7. Where Did Injury Happen (b) specific as to location) | 8. Date and Time Injury Was REPORTED |
|---|---|
| Food Service Dining Room "B" Section | 2-16-99  4:05 PM |

9. In Your Opinion, Was This Injury (a) ☒ Work Related  ☒ Non Work Related

(b) ☒ Institution  ☐ Industry  ☒ Recreation  ☐ Program or Activity

☐ Other (explain)

| 10. To Whom Was Injury First Reported | 11. Part of Body Involved (left knee, etc.) | 12. Kind of Injury (burn, cut, etc.) |
|---|---|---|
| W. Lutwick | Back / Mid Section | Back Injury |

13. Injured's alleged Witnesses (c injury (staff and inmates)

Unknown

14. Injured's Brief Statement as to How Injury Happened. Include Injured's Recommendation for Prevention. (Continue on additional blank sheets, if necessary)  Inmate Thornton stated "I just sat down and fell over and don't remember anything else" Inmate Thornton stated the tables should all be checked for looseness more often.

● Injured's Signature and Date: _____  2-18-99

15. Supervisor's Statement — Must include: a. Last Safety Talk Given, b. Safety Equipment Provided, c. Whether Safety Equipment in Use, d. Whether Proper Guarding Used, e. Corrective Action Taken. (Continue on additional blank sheets, if necessary)

a. 2-2-99 b. Yes c. Yes d. Yes e. chair was removed from dining room for repair. All chairs were checked for defects and problems.

● Supervisor's Signature, Title and Date: W. Lutwick  Cook Foreman  2-18-9

| 16. Medical Description of Injury (refer to BP-Adm 73) | 17. This Injury Required: |
|---|---|
| | a. ☐ No Medical Attention |
| | b. ☐ Minor First Aid |
| | c. ☐ Hospitalization — from _____ to _____ |
| | d. ☒ Work Time Lost — from 2-16-99 to 3-3-99 |
| | e. ☐ Other (explain)    15 days. |
| | Total Lost Time Days: |

18.

**COMPUTER CODING**

| Inst. Code | Reg. No. | Name (Last, First, MI) | | | |
|---|---|---|---|---|---|

| Date of Inj. (mo-da-yr) | Dept. | Area | Machine | Body Part | Source |
|---|---|---|---|---|---|

| Haz. Cond. | Haz. Act | Med. Find. | Acc. Type | Acc./Inj. Cat. | Days Lost | Pending |
|---|---|---|---|---|---|---|

Distribution: Original-Inmate file,
Inst. Safety Office,
Regional Office,
Central Office

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**INJURY–LOST–TIME FOLLOW–UP REPORT**

NAME _Douglass Thornton_    REG. NO. _4n461-118_

RE: INJURY OF _2-16-99_
_____Date

1. (Witnesses Statement) Use Additional Sheets of Plain Paper if Necessary.

_Inmate Thornton took his seat after he had been counted during the 4:15 PM standup count and fell over backwards to the floor. The chair had broken off right at the weld and was lying next to Inmate Thornton._

RECOMMENDATION FOR PREVENTION _Chair was removed and repaired_

_M. Terrill_    _Cook Foreman_    _2-18-99_
Witness Signature    Reg. No. or Title    Date

2. (Department Head's Statement) _The chair broke at the weld and could not be foreseen. That Table's chair assembly was taken out of service until repaired and then it was put back in service._

FOLLOW-UP OR CORRECTION ACTION TAKEN _2-16-99_

_Er/Judy, AFA_    _Assistant FSA,_    _2-23-99_
Department Head    Title    Date

3. (Safety Manager's Comments)

_Inmate needs to be more careful._

_Fred Mecca, acting_    _4/28/99_
Safety Manager    Date

4. (Safety Committee Review—Comments)

_____
Associate Warden's Signature

NAME _Thornton, Douglas_    REG. NO. _____
RE: INJURY OF _2-16-99_ Date    _47461-118_

5. ☒ The Institution Safety Committee has reviewed the report of your injury and it is their opinion that your injury was work related.

☐ The Institution Safety Committee has reviewed the report of your injury and it is their opinion that your injury was not work related.

The final determination of the work relatedness of this injury is subject to review by the Inmate Accident Compensation Committee upon the filing of a claim for Inmate Accident Compensation due to a physical impairment resulting from the injury.

_____    _4/28/99_
Safety Manager    Date

Distribution:    Original–Inmate Record
Blue–Safety Office
Green–Regional Office
Canary–Central Office
Pink–Timekeeper
Goldenrod–Inmate

Douglas. Henry. Thornton
Reg No. 37461-118-SHb 334
USP. Lewisburg. Pa. 17837

Date; March - 6 - 1999

To; Safety Manager
Safety Department
USP. Lewisburg, Pa. 17837

Subject; Inmate Accident Compensation;

Re;

On February 16, 1999, I was injury when a
Chair I was trying to sit in broke. I was on
the four o, clock clock out in the Food Service De
It is the practice of the Food Service Dept, That all
inmates much line up against the wall at Count tim
and after their is Called, to sit down at the first tal
and fill all the Chair at that table unit all of the
are fill befor god seting at the Next. I went to
sit down in the only seat that was not Fill at
the First table after my God Name was Called by
the food Service officer who was doing the out
Four o. Clock out Count, The chair broke as I
try to set in it Cause me to Fall backward and
Causing me to hit the floor   Douglas H. Thornt

```
PAGE 001            *            QUARTERS                    *        09
```

REG NO..: 37461-118 NAME....: THORNTON, DOUGLAS HENRY
CATEGORY: QTR          FUNCTION: DIS          FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| LEW | Z03-334LAD | HOUSE Z/RANGE 03/BED 334L AD | 03-03-1999 1721 | CURRENT |
| LEW | Z01-115LAD | HOUSE Z/RANGE 01/BED 115L AD | 03-03-1999 1217 | 03-03-1999 1721 |
| LEW | B01-122L | HOUSE B/RANGE 01/BED 122L | 02-24-1999 1600 | 03-03-1999 1217 |
| LEW | A03-302L | HOUSE A/RANGE 03/BED 302L | 02-17-1999 0949 | 02-24-1999 1600 |
| LEW | Z01-115LAD | HOUSE Z/RANGE 01/BED 115L AD | 02-16-1999 2334 | 02-17-1999 0949 |
| LEW | A03-302L | HOUSE A/RANGE 03/BED 302L | 02-16-1999 2322 | 02-16-1999 2334 |
| LEW | A03-302L | HOUSE A/RANGE 03/BED 302L | 12-16-1998 1037 | 02-16-1999 1737 |
| LEW | A-3 | A-3 CELLHOUSE | 11-16-1998 0941 | 12-16-1998 1037 |
| LEW | ADM DET | ADMINISTRATIVE DETENTION | 11-03-1998 1814 | 11-16-1998 0941 |
| LEW | R/D | RECEIVING & DISCHARGE | 11-03-1998 1609 | 11-03-1998 1814 |
| LEW | A-3 | A-3 CELLHOUSE | 11-15-1996 1518 | 12-10-1996 1345 |
| LEW | H-3 | H-3 CELLROOM | 11-15-1996 1314 | 11-15-1996 1518 |
| LEW | A-3 | A-3 CELLHOUSE | 06-25-1996 1600 | 11-15-1996 1314 |
| LEW | A-2 | A-2 CELLHOUSE | 06-11-1996 1600 | 06-25-1996 1600 |

G0002      MORE PAGES TO FOLLOW . . .

```
PAGE 001           *            WRK DETAIL                    *      09:46:40

     REG NO..: 37461-118 NAME....: THORNTON, DOUGLAS HENRY
     CATEGORY: WRK        FUNCTION: DIS         FORMAT:

FCL     ASSIGNMENT   DESCRIPTION                    START DATE/TIME STOP  DATE/TIME
LEW     UNASSG       UNASSIGNED WORK DETAIL         03-03-1999 1217 CURRENT
LEW     IDLE 3       IDLE #3 - 3 DAYS               03-02-1999 0722 03-03-1999 1217
LEW     FOOD SVC     FOOD SERVICE                   03-03-1999 0001 03-03-1999 0722
LEW     IDLE 2       IDLE #2 - 2 DAYS               03-01-1999 1510 03-03-1999 0001
LEW     FOOD SVC     FOOD SERVICE                   02-26-1999 0001 03-01-1999 1510
LEW     UNASSG       UNASSIGNED WORK DETAIL         02-25-1999 0001 02-26-1999 0001
LEW     CONV         CONVALESCENCE                  02-19-1999 1518 02-25-1999 0001
LEW     UNASSG       UNASSIGNED WORK DETAIL         02-19-1999 0001 02-19-1999 1518
LEW     IDLE 3       IDLE #3 - 3 DAYS               02-17-1999 1524 02-19-1999 0001
LEW     UNASSG       UNASSIGNED WORK DETAIL         02-16-1999 2337 02-17-1999 1524
LEW     PM KITCHEN   PM KITCHEN                     02-16-1999 2322 02-16-1999 2337
LEW     PM KITCHEN   PM KITCHEN                     12-02-1998 0001 02-16-1999 1737
LEW     AM DINE RM   AM DINE ROOM                   11-22-1998 0001 12-02-1998 0001
LEW     FOOD SVC     FOOD SERVICE                   11-21-1998 0001 11-22-1998 0001


G0002       MORE PAGES TO FOLLOW . . .
```

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

**DATE:** 2/16/99  2235

## PATIENT ENCOUNTER FOLLOWING COMMUNITY MEDICAL TRIP

**Subjective:**

Condition Giving Rise To Community Referral: Fell down — all the screws were

Procedures Provided In Community: Evan — X-ray, removed from chair — Kitchen CT scan — negative.

Complications: None —

Current Symptoms or Concerns: (L) foot feels numb. Cold/hot tingling/ sharp sensation. Initially ↓ low back now → (L)leg.

**Objective:**

Vital Signs: HR 53    BP 113/76

General Apperance: Awake, alert, remembers accident and went

Inspection of Surgical Site(s), if any: — Multiple graft sites. No from injury obvious cuts/bruises.

**Assessment:**

**Plan:**

Follow Up With Staff Physician Scheduled: ( ) Yes   (✓) No   ( ) NA

Paper Work For Follow Up With Consultant Submitted: ( ) Yes   (✓) No   ( ) NA

Paper Work For Follow Up Diagnostic Studies Submitted: ( ) Yes   (✓) No   ( ) NA

SMD Submitted: (✓) Yes   ( ) No   ( ) NA

Patient Education Sheet Signed: ( ) Yes   ( ) No   ( ) NA   refused.

Patient Satisfaction Survey Signed: (✓) Yes   ( ) No   ( ) NA

Paperwork Delivered To Clinical Coordinator: (✓) Yes   ( ) No   ( ) NA

Provisions For Special Diet Made: ( ) Yes   (✓) No   ( ) NA

Special Accommodations: Bottom Bunk, 1st floor until re-evaluat

Physical Therapy: none   ice to lumbar region 15 min/hr

Wound Care: none   No lifting or straining

Medications: Can have nonsteroidal anti-inflammatory of choice   (Anthony Bussanich M.D. (illegible))

| PATIENT'S IDENTIFICATION (Use this space for Mechanical Imprint) | RECORDS MAINTAINED AT: | Anthony Bussanich, M.D. U.S. Penitentiary Lewisburg, P.O. Box 1000, Lewisburg, PA   Hope E. Zeiber, RN |
|---|---|---|

PATIENT'S NAME (Last, First, Middle Initial): Norton, Douglas    SEX: Male

RELATIONSHIP TO SPONSOR:    STATUS:    RANK/GRADE:

SPONSOR'S NAME:    ORGANIZATION:

DEPART./SERVICE: Health Services    SSN/IDENTIFICATION NO.: 97461 118    DATE OF BIRTH: 12/16/57

CHRONOLOGICAL RECORD OR MEDICAL CARE    STANDARD FORM 600 (Rev. 5-84)

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |
| 5/14/99 | S: The patient here for report of his back MRI scan |
| 13·15 | |
| | O:The MRI show mild bulging disc with no no nerve pressure |
| | A. Low Back Pain |
| | P. Thepatient was discussed with him the problem with his back and that there |
| | is no pressure on the nerve to need any corrective treatment. He was instructed |
| | on passive back exercises for his back to help improve the muscle of his back |
| | which may lead to lessen his back condition. |
| | |
| | *Pt. Educ on condition, evaluation and treatment plans. Understood.* |
| | AHMED S. SALAM, MD |

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

| PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)* | REGISTER NO. | WARD NO. |
|---|---|---|

Thornton, Douglas

37461-118

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

NSN 7540-00-634-4176                                                    AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |

CHRONIC CARE CLINIC

5-11-99

1440

Mental Health

Admin note:

I/M seen on Telemedicine Psych clinic.
Continue present medications.
1. Trazadone 75 mg PO hs #90 days
2. Benadryl 100 mg PO hs #90 days

David Robatin, RT

Ahmed S. Abdel-Salam, M.D.

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

Thornton. Douglas
37461-118

REGISTER NO.

WARD NO.

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
**STANDARD FORM 600** (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

USP LEWISBURG

NSN 7540-00-634-4176                                                          AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |
|---|---|

**3/29/99**
**1200**

Admin Note

I observed the inmate walking briskly down the (hall) c̄ apparently no difficulty with his gait or ambulation

East Corridor

A Busasa/MD
Anthony Bussanich, M.D.

A Bussen/MD
Anthony Bussanich, M.D.

**3-30-99**
**1240**

CHRONIC CARE CLINIC  Mental Health

Admin note:

Inmate seen by telemed Psychiatrist

① D/C mellaril
☒ ② Trazadone 75 mg P.O. H.S. #90 tag
☒ ③ Benadryl 100 mg P.O. H.S. #90 tag
F/U 6 weeks

Annette R. Brown, RT(R)

Ahmed S. Abdel-Salam, M.D.

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

Thornton, Douglas

37461-118

| REGISTER NO. | WARD NO. |
|---|---|

**CHRONOLOGICAL RECORD OF MEDICAL CARE**
Medical Record
**STANDARD FORM 600** (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |
|---|---|
| 3/9/99 0830 | S. This _____ well black requested _____ of medication for back pain. Apparently he was prescribed NSAID (Naproxen) 2/28/99 for LBP (??) He now states he has back pain. _____ the of past illness. Documented Axis II Dx - personal personality (Antisocial personality) Narciss _____ personality. Hx of medial meniscus tear left knee. Hx of left knee _____ surgery. Hx of episode of Hunger Strike (possible manipulative _____ behavior). NKA |
| | O - Ambulatory, _____ and not in _____ distress |
| | A  LBP. (acute ??) myalgia |
| | P (1) Medication Education was conducted |
| | (2) Discussed effects of the Medication |
| | (3) Pt. understands the treatment regimen |
| | (4) (1) Naproxen NAT _____ 250 mg  1 cap po PC Bid x 7 days  (Do not take with DJ's) |
| | (5) RTC if necessary |

Anthony Bussanich, M.D.

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| USP LEW | | HSU | |
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

REGISTER NO. 37461-018

WARD NO.

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |

2/26/99   12:45

S. Patient injured his back when as he claim while sitting on a chair it broke and he fell down to the floor. He was sent to the outside hospital where he was evaluated and was released. He was seen here since then several times but he claim that because the medicine prescribed for him made him sleepy he quit takeing his medications prescribed by the psychatrist and he has been unable to sleep. He continue on the complaints of pain in his back and radiate to his left leg increase on bending and has been also complaining of hot and cold sensation in his leg. He had problem with his back in 1997 and was treated in private facility for that.

O. 1- limitation of flexion of the lumber spine.
  2- increase of pain on walking on the heals and tip toes.
  3- increase of the pain on bending.
  4- neurological exam. was not done due to marked pain.

A. 1- Lumbosacral Strain, Acute.
  2- R/O Lumber Disc Disease.

P. 1- Continuation of the medication he has been on.
  2- Return to take his Psychatric medication as prescribed.
  3- No activities for the next 3 days.
  4- To return Monday if symptoms persist

Ahmed S. Abdel-Salam, M.D.

01 MAR 1999    0935

S: 29 Y OBJ IS SEEN ON S/C C LL PRESSURE IN L BUTTOCK ⊕ PROLONGED STANDING. ON NAPROXEN WHICH IS NOT HELPFUL. ALSO ON AMITRIPTYLINE & TRAZADONE. INJURED BACK LAST WEEK. NKDA. SMOKER. FELL DOWN STEPS & INJURED BACK IN 1997.

O: ALERT + AMBULATORY W/O W/N. W/H. IN NAD. NO JVD, TREMORS, COUGH OR OBVIOUS ABNORMALITIES.

(CONTINUED)    V.S: P- 92 + REGULAR    WT- NO SCALE AVAILABLE    T- NO

| HOSPITAL OR MEDICAL FACILITY | | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|---|
| SPONSOR'S NAME | | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

| | REGISTER NO. | WARD NO. |
|---|---|---|

Thurston, Douglas
37461-118

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record

STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

**2/25/99**
**10/5**

S. 42 y/o black male with PMH of medial menisc tear (L) knee ('87); hx. of contractures (R) & (L) axillary (L) elbow. (R) thumb 2nd° to burns (7/95); hx. of plplite cyst (L) knee (Baker's cyst)(4/87); hx. of paranoid personality, antisocial personality; hx of manipulative behavior; NKDA. Current meds. Trazodone 75mg Thioridazine HCL 25mg ÷ @ HS; F/pt is complaining of back pain.

O. #pt was observed when he was on the waiting room where he was "normal" sitting down. When he was called to be seen now he doesn't want to sit down because he states he feels better that way. He started to tell about that he felt last week and "what about work?" (his convolescence was for 7 days). NAD noted.

A. ① LBP   vs. Malingering in order to get lay i

P. ① F/pt was explained the anti inflamatory med will be renewed. Lay in denied.
② Naproxen 275 mg ÷ tat P.O. TID x 7d. #21
③ Flexeril HCL 10mg ÷ tat P.O. TID x 2d. #6
④ pt. educ. (Tx. and Rx. use explained. Pt. understood. F/u PRN).                    Luis Ramirez, P.

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | (RECORDS MAINTAINED A) |
|---|---|---|---|
| Bussnich MD | MD | | LUIS RAMIREZ PHYSICIAN ASSISTANT |
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |
| Anthony Bussanich M.D. | | | |

PATIENT'S IDENTIFICATION: (For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)

Thornton, Douglas
DOB: 2/15/57

| REGISTER NO. | WARD NO. |
|---|---|
| 37461-118 | |

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

NSN 7540-00-634-4176                                                    AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |

S: (cont)

2/18/99
0915

However Dilantin + Phenobarb were stopped because he no longer had seizures. Denies any H/o seizures for many years. Still cannot recall accurately + completely his reg # but this may be his baseline.

As for current symptoms complains of pins + needles running down his (L) leg. States current medication definitely helps. Prefers standing and assumes antalgic position c̄ slight leaning towards (L)

*(margin note, vertical:) Smelling Room on 2/16/99 also had BP low*

O: BP (88/60)  HR 100  RR 18

SKIN: evidence of skin graft lesions especially extensive ~2mm² over lat aspect of L LE

HEENT: pehrla /comu    C/L clear

HEART: S1S2 RRR    ABD neg

EXT: limited. I/M not cooperative decreased or absence of sensory perception especi marked over skin graft areas at (L) calf

CNS: Mto. words deficits questionable cross sciatic stretch reflex on (L).

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries; give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

REGISTER NO. 37461-118    WARD NO.

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record

STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

NSN 7540-00-634-4176                                                      AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |

2/17/99
0930
SHU basement

S: Pt evaluated. Standing in cell. Still c/o (L) leg "hot + cold" + "tingling" Pain on standing. Discussed case c̄ JACKIE ER Nurse at EVAN HOSP. Apparently all radiological studies (je c L/S spine + CT of cervical area) neg for fracture. Discharge note by Dr CORMANN reviewed

O: physical exam limited; seen in SHU basement.

VSS stable

SKIN: S/p scar tissue 2° to prior burn (?)

HEART: reg, comn

c/L: clear

EXT: (L) para spinal muscle spasm + tenderness antalgic gait to (R)

CNS: no apparent gross abn. noted

A: low back contusion (?) + Strain

P: (1) best x 24 hrs then progressive exercises (explained to patient.)                    cont

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

THORNTON, DOUGLAS
37461 - 118

REGISTER NO.
37461-118

WARD NO.

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record

STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

**DATE:** 2/16/99  2235

**PATIENT ENCOUNTER FOLLOWING COMMUNITY MEDICAL TRIP**

**Subjective:**

Condition Giving Rise To Community Referral: Fell down - all the screws were

Procedures Provided In Community: Evan - removed from chair - Ketthie. x-rays, CT scan ⊖ negative.

Complications: None -

Current Symptoms or Concerns: ® foot feels numb. Cold/hot tingling/ sharp sensation. Initially i low back now i ® leg.

**Objective:**

Vital Signs: HR 53    BP 113/76

General Apperance: Awake, alert, remembers accident and report from injury

Inspection of Surgical Site(s), if any: — Multiple graft sites. No obvious cuts/bruises.

**Assessment:**

**Plan:**

Follow Up With Staff Physician Scheduled: ( ) Yes    (✓) No    ( ) NA

Paper Work For Follow Up With Consultant Submitted: ( ) Yes    (✓) No    ( ) NA

Paper Work For Follow Up Diagnostic Studies Submitted: ( ) Yes    (✓) No    ( ) NA

SMD Submitted: (✓) Yes    ( ) No    ( ) NA

Patient Education Sheet Signed: ( ) Yes    ( ) No    ( ) NA    refused.

Patient Satisfaction Survey Signed: (✓) Yes    ( ) No    ( ) NA

Paperwork Delivered To Clinical Coordinator: (✓) Yes    ( ) No    ( ) NA

Provisions For Special Diet Made: ( ) Yes    (✓) No    ( ) NA

Special Accommodations: Bottom Bunk, 1st floor until re-evaluate

Physical Therapy: none    ice to lumbar region 15 min/hr

Wound Care: none    No lifting or straining

Medications: Can have nonsteroidal anti - inflammatory of choice

*(signature) Anthony Bussanich, M.D.*
*(signature) Hope E. Zerber, RN*

RECORD MAINTAINED AT: Penitentiary Lewisburg, P.O. Box 1000, Lewisburg, PA

PATIENT'S IDENTIFICATION (Use this space for Mechanical Imprint)

PATIENT'S NAME (Last, First, Middle Initial): Thorton, Douglas

SEX: Male

RELATIONSHIP TO SPONSOR: | STATUS: | RANK/GRADE:

SPONSOR'S NAME: | ORGANIZATION:

DEPART./SERVICE: Health Services | SSN/IDENTIFICATION NO.: 91746  118 | DATE OF BIRTH: 12 16 57

CHRONOLOGICAL RECORD OR MEDICAL CARE    STANDARD FORM 600 (Rev. 5-84)

NSN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|

| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 2/16/99 1630 | S: 40 year old African American male who apparently was sitting in a chair when it gave way lying on a gurney c/o pins + needles in his back SKIN: Ø lesions   HEENT: perrla / eomi BP: 161/73   HR 79 C/L CTA   Heart S1S2RRR   ABD: Ø organomegaly EXT: ↓ Sensory perception LUE + LLE ↓ Motor LUE + LLE does not recall events surrounding incident; does not recall his registration # (+) Babinski: toes downgoing on L left ↓ DTR on (L) A: 1) fall c̄ possible L4 - L5 fx + 2) concussion neurodeficits  2) R/O (L) hip fx P: transfer to HVAN ER                          [signature] |
| 1645 | BP: 137/71   HR 72   RR = 18 109/75   HR 86 136/82   HR 69 |
| 1650 - | still describes "pins + needles in his back" |

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: (For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)

REGISTER NO.

WARD NO.

THORNTON, DOUGLAS
# 37461-118

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

FEB-17-99 WED 09:35 AM  ERREG                    FAX NO. 5222772                    P. 03

**NAME:    DOUGLAS THORNTON**                    EVANGELICAL COMMUNITY HOSPITAL
**NUMBER:  3800874**  ER                          ONE HOSPITAL DRIVE
                                                 LEWISBURG, PA  17837

## CONSULTATION

**DATE OF CONSULT:**   02-16-99

**CHIEF COMPLAINT:**   "Hot and cold tingling feelings running up and down my low back and left leg."

**HISTORY OF PRESENT ILLNESS:**   The patient is a 40-year-old black male resident of Lewisburg Penitentiary who reports one year left in his current sentence.  He denies any previous history of back problems.  He was in his usual state of health until this evening when he sat down into a chair which reportedly broke, causing him to fall backwards into somebody seated behind him.  It was unclear whether he fell back and struck the other person first or the ground first.  He does not recall what struck the ground first.  He is vague on the details of exactly what he felt at the time or where he struck.  He perseverates with his chief complaint with little ability to expand on his statement that he just gets hot and cold, sometimes burning sensation going up and down his left leg.  He states this feeling is everywhere in his left leg.  At times he seems to suggest it is in his right leg but when you specifically ask him he says no it is not in his right leg.  He denies any sense of weakness but notes that he cannot move his left leg as well.  During my history, which apparently is somewhat different from that obtained by Dr. Donegan, he denied symptoms in his left arm, right arm.  He denies any headache, change in his speech, weakness or numbness in his face or dizziness.  He denies history of back problems.  Plain x-rays of the lumbosacral spine reportedly revealed no abnormalities.  CAT scan of the head was likewise reported to be unremarkable.  There is no history of loss of consciousness or periods of unresponsiveness.  The patient does have a history of depression and apparently has also had psychotic symptoms with decreased sleep, anxiety and hallucinations.  He is treated with Mellaril and Trazodone and has been doing better.  Dr. Donegan reports that during his exam the patient tended to have a left upper extremity drift without pronation.  He also was unable to lift his left leg and initially had very movement at all in his left leg.

**PAST MEDICAL HISTORY:**   History of depression and psychotic symptoms. History of anxiety.  History of sleep difficulties.  History of seizure in the past and treated with Dilantin.  He is not able to give me any specific details with regard to this.  History of diffuse burns with multiple areas of skin grafting over all of his extremities and back.  He states this occurred when he was very young and he does not remember it.   Medications:  Mellaril and Trazodone.

**ALLERGIES:**   No known drug allergies.

**SOCIAL HISTORY:**   The patient is originally from Baltimore, Maryland. He is currently finishing out his sentence at Lewisburg Penitentiary. He states he has one year left to go.

**SYSTEMIC REVIEW:**  The patient denies any numbness in his groin or perianal region.

**PHYSICAL EXAMINATION:**  Blood pressure 116/70.  Respirations 20.  Pulse 16.  Temperature 97.  The patient is a well-developed, well-nourished very fit appearing black male in no acute distress except for when he refers to his discomfort.  When not being interviewed or examined, he lies quietly and comfortably, sleeping on the bed.  HEENT exam reveals

FEB-11-00 WED 09:30 AM   ERREG                    FAX NO. 9222772                        P. 04

NAME:   DOUGLAS THORNTON              EVANGELICAL COMMUNITY HOSPITAL
NUMBER: 3800874                       ONE HOSPITAL DRIVE
                                      LEWISBURG, PA  17837

pupils equal, round and responsive to light.  Extraocular muscles
intact.  There is no afferent pupillary defect nor nystagmus.
Musculoskeletal exam revealed normal tone in all extremities.  The bulge
in his quads on the left was somewhat diminished compared with the
right.  His burns and grafting appear more extensive in this region as
well.  Strength exam in the upper extremities revealed 5/5 shoulder
shrug with intermittent give-way weakness.  Shoulder abduction at less
than 30° was notable for some give-way weakness on the left.  He was
ultimately able to attain at least 4+ out of 5 strength on the left.
Right was 5 out of 5.  Right upper extremity was 5 out of 5.  Left upper
extremity had give-way weakness in all muscles tested with triceps
demonstrating at least 4+ strength but finger extension being less than
3 strength.  When tested he is able to give resistance when his fingers
are in the flexed position and his extension and strength are at least 4
but with give-way weakness. Finger flexion initially was 4- but with
encouragement gave me near 5 out of 5 finger flexion.  He denied any
report of pain with any of his left upper extremity strength testing.
In the lower extremities he had marked variation in his strength
testing.  On repetition with initially inability to lift his left leg
off the bed, he subsequently was able to give at least some resistance
but had a positive Hoover's sign bilaterally.  On formal manual muscle
strength testing at the knee, in flexion and extension he gave 4- out of
5 strength.  However, when standing he was able to weight-bear with his
left lower extremity without difficulty.  In the right lower extremity
the patient demonstrated give-way weakness as well, with hip flexion no
greater than 4 out of 5 strength with a positive Hoover's sign.  Plantar
flexion and dorsiflexion of both left and right foot were at least 5-
with again some give-way.  There were no abnormal movements noted. Spine
exam revealed no focal tenderness above the level of L2.  There was some
left greater than right tenderness to palpation in the paraspinous
muscles and there appeared to be greater spasm of the paraspinous
muscles on the left than on the right.  The patient refused testing for
an anal wink response or repeat rectal exam despite being counseled that
his was an important part of my neurologic evaluation and that without
him being compliant to all testing, I could not completely assess his
complaints.  He voiced understanding of this but refused to have this
testing performed.  Neurologic exam, mental status, the patient was
alert and oriented to person, place, month and year. The patient was
rather vague about his past medical history and was either unable to
remember details or reluctant to admit or report details of his past
medical problems.  There were intermittent difficulties with his
attention without any automatisms or other overt manifestations of
seizure during these brief periods of inattentiveness.  He did have a
tendency to squint with his left eye but this occurred both at times
where he seemed to be attentive and at times when he was briefly
inattentive.  Spontaneous speech was without dysarthria.  The patient
was fluent.  Cranial nerves see above and normal facial sensation.  He
had slight decreased eye closure strength bilaterally.  Soft palate and
tongue moved in the midline.  Shoulder shrug was symmetric but with some
give-way.  Complex motor exam, finger-to-finger and Fisher's test were
without dysmetria.  He was slightly slower on the left than the right
with Fisher's test.  Gait and station, the patient was able to stand on
his feet and support his weight.  He initially tended to favor his left
leg and hold it up in an antalgic fashion but was able to ultimately
stand evenly on both legs, and on sitting back up on the table was able
to push off with his left leg.  He reported some pain with straight leg
raising to 45° but did not spontaneously report any pain when his seated
straight leg position was almost 90°.  He was able briefly stand on

FEb-17-99 WED 09:36 AM  ERREG                    FAX NO. 5222772                    P. 05

**NAME:**   DOUGLAS THORNTON                    EVANGELICAL COMMUNITY HOSPITAL
**NUMBER:**  3800874                            ONE HOSPITAL DRIVE
                                                LEWISBURG, PA  17837

either foot with the either off the ground.  Sensory exam revealed
report of absent vibratory sensation in the left leg.  He reported
temperature sensation as being symmetric in the face, torso and arms and
hands, including the radial nerve region on the left.  Light touch was
normal in these regions as well.  In the lower extremities his left
lower extremity had patchy areas of decreased sensation which did not
follow a dermatomal pattern and on repeat testing the patient would give
different results.  He clearly stated that his posterior calf, medial
calf, and anterior and slightly lateral leg had normal cold sensation,
as well as the anterior thigh and medial foot.  He initially reported
symmetric dorsum of the foot sensation to cold but later reported no
cold perception on the dorsum of his left foot.  The same was true for
the lateral portion of his left foot.  To pinprick. reportedly he had
denied pain in most areas on testing his left lower extremity by Dr.
Donegan, but to my exam he appreciated pinprick in most areas but denied
pinprick sensation across the dorsum of his left foot and the lateral
and plantar surfaces of his left foot.  He had preserved sensation in
his left calf.  The right lower extremity sensation to pinprick and
temperature was equal throughout.  Deep tendon reflexes were 2 and
symmetric throughout.  Plantar response revealed toe were downgoing
bilaterally.

**IMPRESSION:**  1.  Probable low back strain.  2.  Subjective pain and
sensory symptoms involving the low back and left lower extremity without
objective evidence on neurologic exam of a lesion in his central lower
peripheral nervous system.  His lack of compliance with full physical
exam prevents me from completely excluding organic disease.  He could
potentially have a mild to moderate radiculopathy but it would be
difficult to explain all of his symptoms on this basis.  3.  The patient
has multiple findings on exam that are consistent with embellishment and
these include positive Hoover signs bilaterally as well as give-way
weakness with denial of pain as limiting his ability,  a positive slip
test.  I explained to the patient that some of these exam findings were
inconsistent with neurologic disease and that they impaired by ability
to fully assess his problem and that I would like to give him another
chance to give me good strength testing but he refused to do this.
These findings suggest that there may be some component of conversion
disorder to his complaints.

**RECOMMENDATIONS:**  1.  Cold application to the patient's lumbosacral
spine region for 15 minutes out of each hour he can spare over the next
24 hours.  2.  Non-steroidal anti-inflammatory agents to decrease
inflammation.  3.  Repeat exam to try to further delineate any reliable
or reproducible findings suggestive of a radiculopathy or other nervous
system lesion.  4.  Use of neuropathic pain medications, such as
Neurontin, may be beneficial for his paresthesias.  5.  The patient
should avoid any straining or activities that reproduce his
paresthesias.  6.  If the patient's lower extremity symptoms persist and
are not improving on their own, or if there is any worsening of
function, then further evaluation with an MRI is recommended.

CC:    Dr. Donegan
       Dr. Bussanich

kak    02-16-99    02-16-99    3    Edmund W. Cornman, M.D.

                                    Anthony Bussanich, M.D.

FEB-17-99 WED 09:35 AM   ERREG                    FAX NO. 3222772                    P. 02

NAME:      DOUGLAS THORNTON                    EVANGELICAL COMMUNITY HOSPITAL
NUMBER:    3800874                             ONE HOSPITAL DRIVE
                                               LEWISBURG, PA  17837

PLAN:  Rule out fracture as an etiology of the patient's symptoms.  We
will also do a CT scan of the head because the patient was unreliable in
his history.  If these are normal, the patient will be discharged back
to the penitentiary for further observation and to recheck if not
improving.

KCG   02/16/99    02/16/99   3    Michael A. Donegan, D.O.

Anthony Bussanich, M.D.

NAME:    DOUGLAS THORNTON          EVANGELICAL COMMUNITY HOSPITAL
NUMBER:  3800874                   ONE HOSPITAL DRIVE
                                   LEWISBURG, PA  17837

## CONSULTATION

DATE OF CONSULT:  02-16-99

CHIEF COMPLAINT:   "Hot and cold tingling feelings running up and down
my low back and left leg."

HISTORY OF PRESENT ILLNESS:   The patient is a 40-year-old black male
resident of Lewisburg Penitentiary who reports one year left in his
current sentence.  He denies any previous history of back problems.  He
was in his usual state of health until this evening when he sat down
into a chair which reportedly broke, causing him to fall backwards into
somebody seated behind him.  It was unclear whether he fell back and
struck the other person first or the ground first.  He does not recall
what struck the ground first.  He is vague on the details of exactly
what he felt at the time or where he struck.  He perseverates with his
chief complaint with little ability to expand on his statement that he
just gets hot and cold, sometimes burning sensation going up and down
his left leg.  He states this feeling is everywhere in his left leg.  At
times he seems to suggest it is in his right leg but when you
specifically ask him he says no it is not in his right leg.  He denies
any sense of weakness but notes that he cannot move his left leg as
well.  During my history, which apparently is somewhat different from
that obtained by Dr. Donegan, he denied symptoms in his left arm, right
arm.  He denies any headache, change in his speech, weakness or numbness
in his face or dizziness.  He denies history of back problems.  Plain
x-rays of the lumbosacral spine reportedly revealed no abnormalities.
CAT scan of the head was likewise reported to be unremarkable.  There is
no history of loss of consciousness or periods of unresponsiveness.  The
patient does have a history of depression and apparently has also had
psychotic symptoms with decreased sleep, anxiety and hallucinations.  He
is treated with Mellaril and Trazodone and has been doing better.  Dr.
Donegan reports that during his exam the patient tended to have a left
upper extremity drift without pronation.  He also was unable to lift his
left leg and initially had very movement at all in his left leg.

PAST MEDICAL HISTORY:   History of depression and psychotic symptoms.
History of anxiety.  History of sleep difficulties.  History of seizure
in the past and treated with Dilantin.  He is not able to give me any
specific details with regard to this. History of diffuse burns with
multiple areas of skin grafting over all of his extremities and back.
He states this occurred when he was very young and he does not remember
it.   Medications:  Mellaril and Trazodone.

ALLERGIES:   No known drug allergies.

SOCIAL HISTORY:    The patient is originally from Baltimore, Maryland.
He is currently finishing out his sentence at Lewisburg Penitentiary.
He states he has one year left to go.

SYSTEMIC REVIEW:  The patient denies any numbness in his groin or
perianal region.

PHYSICAL EXAMINATION:  Blood pressure 116/70.  Respirations 20.  Pulse
16.  Temperature 97.  The patient is a well-developed, well-nourished
very fit appearing black male in no acute distress except for when he
refers to his discomfort.  When not being interviewed or examined, he
lies quietly and comfortably, sleeping on the bed.  HEENT exam reveals

NAME:   DOUGLAS THORNTON           EVANGELICAL COMMUNITY HOSPITAL
NUMBER: 3800874                    ONE HOSPITAL DRIVE
                                   LEWISBURG, PA  17837

pupils equal, round and responsive to light.  Extraocular muscles
intact.  There is no afferent pupillary defect nor nystagmus.
Musculoskeletal exam revealed normal tone in all extremities.  The bulge
in his quads on the left was somewhat diminished compared with the
right.  His burns and grafting appear more extensive in this region as
well.  Strength exam in the upper extremities revealed 5/5 shoulder
shrug with intermittent give-way weakness.  Shoulder abduction at less
than 30° was notable for some give-way weakness on the left.  He was
ultimately able to attain at least 4+ out of 5 strength on the left.
Right was 5 out of 5.  Right upper extremity was 5 out of 5.  Left upper
extremity had give-way weakness in all muscles tested with triceps
demonstrating at least 4+ strength but finger extension being less than
3 strength.  When tested he is able to give resistance when his fingers
are in the flexed position and his extension and strength are at least 4
but with give-way weakness.  Finger flexion initially was 4- but with
encouragement gave me near 5 out of 5 finger flexion.  He denied any
report of pain with any of his left upper extremity strength testing.
In the lower extremities he had marked variation in his strength
testing.  On repetition with initially inability to lift his left leg
off the bed, he subsequently was able to give at least some resistance
but had a positive Hoover's sign bilaterally.  On formal manual muscle
strength testing at the knee, in flexion and extension he gave 4- out of
5 strength.  However, when standing he was able to weight-bear with his
left lower extremity without difficulty.  In the right lower extremity
the patient demonstrated give-way weakness as well, with hip flexion no
greater than 4 out of 5 strength with a positive Hoover's sign.  Plantar
flexion and dorsiflexion of both left and right foot were at least 5-
with again some give-way.  There were no abnormal movements noted.  Spine
exam revealed no focal tenderness above the level of L2.  There was some
left greater than right tenderness to palpation in the paraspinous
muscles and there appeared to be greater spasm of the paraspinous
muscles on the left than on the right.  The patient refused testing for
an anal wink response or repeat rectal exam despite being counseled that
his was an important part of my neurologic evaluation and that without
him being compliant to all testing, I could not completely assess his
complaints.  He voiced understanding of this but refused to have this
testing performed.  Neurologic exam, mental status, the patient was
alert and oriented to person, place, month and year.  The patient was
rather vague about his past medical history and was either unable to
remember details or reluctant to admit or report details of his past
medical problems.  There were intermittent difficulties with his
attention without any automatisms or other overt manifestations of
seizure during these brief periods of inattentiveness.  He did have a
tendency to squint with his left eye but this occurred both at times
where he seemed to be attentive and at times when he was briefly
inattentive.  Spontaneous speech was without dysarthria.  The patient
was fluent.  Cranial nerves see above and normal facial sensation.  He
had slight decreased eye closure strength bilaterally.  Soft palate and
tongue moved in the midline.  Shoulder shrug was symmetric but with some
give-way.  Complex motor exam, finger-to-finger and Fisher's test were
without dysmetria.  He was slightly slower on the left than the right
with Fisher's test.  Gait and station, the patient was able to stand on
his feet and support his weight.  He initially tended to favor his left
leg and hold it up in an antalgic fashion but was able to ultimately
stand evenly on both legs, and on sitting back up on the table was able
to push off with his left leg.  He reported some pain with straight leg
raising to 45° but did not spontaneously report any pain when his seated
straight leg position was almost 90°.  He was able briefly stand on

NAME:   DOUGLAS THORNTON        EVANGELICAL COMMUNITY HOSPITAL
NUMBER:  3800874                ONE HOSPITAL DRIVE
                                LEWISBURG, PA  17837

either foot with the either off the ground.  Sensory exam revealed
report of absent vibratory sensation in the left leg.  He reported
temperature sensation as being symmetric in the face, torso and arms and
hands, including the radial nerve region on the left.  Light touch was
normal in these regions as well.  In the lower extremities his left
lower extremity had patchy areas of decreased sensation which did not
follow a dermatomal pattern and on repeat testing the patient would give
different results.  He clearly stated that his posterior calf, medial
calf, and anterior and slightly lateral leg had normal cold sensation,
as well as the anterior thigh and medial foot.  He initially reported
symmetric dorsum of the foot sensation to cold but later reported no
cold perception on the dorsum of his left foot.  The same was true for
the lateral portion of his left foot.   To pinprick. reportedly he had
denied pain in most areas on testing his left lower extremity by Dr.
Donegan, but to my exam he appreciated pinprick in most areas but denied
pinprick sensation across the dorsum of his left foot and the lateral
and plantar surfaces of his left foot.  He had preserved sensation in
his left calf.  The right lower extremity sensation to pinprick and
temperature was equal throughout.  Deep tendon reflexes were 2 and
symmetric throughout.  Plantar response revealed toe were downgoing
bilaterally.

IMPRESSION:  1. Probable low back strain.  2.  Subjective pain and
sensory symptoms involving the low back and left lower extremity without
objective evidence on neurologic exam of a lesion in his central lower
peripheral nervous system.  His lack of compliance with full physical
exam prevents me from completely excluding organic disease.  He could
potentially have a mild to moderate radiculopathy but it would be
difficult to explain all of his symptoms on this basis.  3.  The patient
has multiple findings on exam that are consistent with embellishment and
these include positive Hoover signs bilaterally as well as give-way
weakness with denial of pain as limiting his ability,  a positive slip
test.  I explained to the patient that some of these exam findings were
inconsistent with neurologic disease and that they impaired by ability
to fully assess his problem and that I would like to give him another
chance to give me good strength testing but he refused to do this.
These findings suggest that there may be some component of conversion
disorder to his complaints.

RECOMMENDATIONS:  1.  Cold application to the patient's lumbosacral
spine region for 15 minutes out of each hour he can spare over the next
24 hours.  2.  Non-steroidal anti-inflammatory agents to decrease
inflammation.  3.  Repeat exam to try to further delineate any reliable
or reproducible findings suggestive of a radiculopathy or other nervous
system lesion.  4.  Use of neuropathic pain medications, such as
Neurontin, may be beneficial for his paresthesias.  5.  The patient
should avoid any straining or activities that reproduce his
paresthesias.  6.  If the patient's lower extremity symptoms persist and
are not improving on their own, or if there is any worsening of
function, then further evaluation with an MRI is recommended.

CC:   Dr. Donegan
      Dr. Bussanich

kak    02-16-99     02-16-99     3     Edmund W. Cornman, M.D.

37461-11f

Anthony Bussanich, M.D.

NAME:    DOUGLAS THORNTON
NUMBER:  3800874

EVANGELICAL COMMUNITY HOSPITAL
ONE HOSPITAL DRIVE
LEWISBURG, PA  17837

EMERGENCY SERVICES: 02/16/99

CHIEF COMPLAINT:  The patient is a 41-year-old gentleman who presented to the Emergency Room for evaluation of injuries sustained in a fall.

HISTORY:  The patient was a poor historian and somewhat uncooperative making history taking and the physical examination extremely difficult. The patient is an inmate at the penitentiary.  The patient stated that someone unscrewed the screws on a stool that he sat on and then fell from.  He immediately complained of having a tingling sensation that he described as being hot and cold going up and down his legs.  He stated that he thought it was his left leg.  When I asked the patient further questions regarding the details, he told me the same story again. Speaking with the guards, they stated that he fell and that they went and got to him immediately.  They got him up and put him on a gurney. They took him from the gurney to the penitentiary health service and from there they transported him here for further evaluation.  While waiting for the ambulance, he wet his pants.

SYSTEMIC REVIEW:  He denied any headache, neck discomfort, chest discomfort, belly discomfort, or weakness.

PHYSICAL EXAMINATION: On examination, he refused to move his lower extremities.  His head had no signs of trauma with palpation.  In fact, when I was palpating his head, he said that it was his leg.  There was no Battle sign.  Neck was nontender.  Chest was nontender.  His upper extremities had no tenderness nor was there tenderness in the lower extremities.  The patient had tenderness in the lumbosacral junction area with palpation but there was no external signs of trauma.  There was no step off.  His belly was soft and nontender.  His sacrum and coccyx were nontender.  Rectal examination, sphincter tone was present. He also had cremasteric reflex present.  In the lower extremities when I held his leg up, he kept the right one from falling immediately.  The left leg he let fall immediately. He withdrew some with pressure on his nail to his right lower extremity but he did not to his left lower extremity.  He would not move his lower extremities, however, on command.  The color and texture of the lower extremities were normal. Sensation, he stated that he could feel me sticking him but yet he would not identify the type of sensation or what extremity he was feeling it from.  His deep tendon reflexes were symmetrical and his toes were downgoing.  Mental status, he was conversational and interacted with me at times.  He clearly demonstrated good cognitive function such as what happened to him and that someone had done it to him and that he was in Lewisburg.

LABORATORY DATA:   A lumbosacral spine and CT scan of the head were pending at the time of dictation.

ASSESSMENT:   1. Numbness and tingling to the left lower extremity by history.
2. Question of weakness in the left lower extremity.
3. Back pain.

# 97461-118

Anthony Bussanich, M.D.

**~~Evangelical~~ Community Hospita**
One Hospital Drive • Lewisburg, PA 17837
(717) 522-2645

**EMERGENCY SERVICE**
**PATIENT INSTRUCTION SHEET**

Patient's Name: _Douglas Thornton_

YOU HAVE BEEN SEEN IN THE EMERGENC ERVICE OF THE EVANGELICAL COMMUNITY HOSPIT
EMERGENCY CARE ONLY. IT IS IMPORTANT THAT YOU CONTACT YOUR OWN DOCTOR OR THE CL
CLINIC FOR FOLLOW-UP CARE. THE PARAGRAPH WHICH APPLIES TO YOU HAS BEEN CHECKE

Diagnosis- ① Subjective lowback + Left leg paresthes
and sensory abnormality with no obje
evidence of nervous system damage o
② Suspect low back strain.
③ Cannot exclude mild sensory predominate ra

### WOUND CARE

- ☐ Keep wound clean and dry.
- ☐ Elevate the wound above the level of your heart.
- ☐ Return here or to family doctor if signs of infection develop (increasing redness, swelling, pain, appearance of pus, fever, foul odor or red streaks in ∗ skin).
- ☐ Return here or to your family doctor for wound check in _____ days.
- ☐ _____ times a day, clean the wound with hydrogen peroxide on a Q-tip, then apply Neosporin, Bacitracin or Polysporin ointment.
- ☐ _____ time(s) a day, wash the burns gently (a shower is good) then reapply the Silvadene cream and redress.
- ☐ Suture removal in _____ days

### SPRAINS • STRAINS • CONTUSIONS • FRACTURES • OTHER

- ☐ Rest affected part for the next _____ days, or until pain free.
- ☐ Elevate affected part above the level of your heart.
- ☐ Apply ice to affected part as long as swelling is present. Leave ice on for 20-30 minutes at a time, then remove for same period of time. (To prevent Frostbite)
- ☐ Apply warm or cold compresses to affected area for 30 minutes, 4 times daily, starting _____
- ☐ Reapply ace bandage if it becomes loosened or if the extremity below the bandage becomes painful, numb, blue, or swollen.
- ☐ Use crutches, no weight bearing until able to stand without pain, then gradually increase weight bearing until you are walking normally.
- ☐ Crutches instruction: _____
- ☐ Wear splint for _____ days or until reexamined.
- ☐ Wear sling for _____ days or until reexamined.
- ☐ Use cane, crutches, or walker with partial weight bearing.
- ☐ Follow cast instruction sheet.

### GENERAL INSTRUCTIONS

- ☐ Bed rest for the next _____ days.
- ☐ Increase fluid intake.
- ☐ Do not eat or drink for _____ hrs.
- ☐ Take only clear liquids by mouth (clear soup, flat soda, fruit juice, Jello-water, Pedialyte®) in small quantities at frequent intervals until nausea, vomiting, diarrhea stops, then slowly return to usual diet.
- ☐ Use vaporizer or cool mist humidifier.
- ☐ All x-rays are re-read by the radiologist within 24 hours. You will be notified if his interpretation of the films requires a change in your treatment.
- ☐ We have done a _____ culture. The results should be available within 24-72 hrs. You may call the Emergency Dept. for the results.
- ☐ Salt Solution: ¼ level teaspoon of salt in 4 oz. of water.

### MEDICATIONS

- ☐ Take _____ tabs or _____ teaspoons Ibuprofen four times per day with food for pain or fever.
- ☐ Take _____ Tylenol every _____ hours for pain or fever.
- ☐ Give _____ teaspoons Tylenol Elixer, or _____ dropperfuls Tylenol Drops, or _____ chewable Tylenol tablets, every 4 hrs. for pain or fever greater than _____
- ☐ Get prescriptions filled; take or apply medicine as directed on label.
- ☐ Do not drive, operate machinery, climb ladders, or drink alcoholic beverages while on this medication.
- ☐ Continue taking previous medicine.
- ☐ Stop medication if rash develops and call your doctor.

### EYE INJURIES • CONDITIONS

- ☐ Use antibiotic eye drops. One drop every two hours while awake.
- ☐ Any eye injury or condition is potentially hazardous. Call your eye doctor, or the emergency dept. if severe pain, redness, or blurred vision develops.
- ☐ The drop(s) placed in your eye(s) may cause blurry vision or impair judgement of distance. Please do not drive.
- ☐ Wear sunglasses.
- ☒ OTHER ⊛ Ice to lumbar region 15 min out of each hour ∗ while awa
  for 24 hrs. No lifting or straining. Nonsteroidal antiinflamatory of choice
  Limit activities to those which don't reproduce paresthesias into
  leg. Increase ambulation as tolerated. ⊛ Repeat exam and if complaints
  persist or worsening then would obtain MRI of LS spine to exclude radi...

### HEAD INJURIES

limited by patient compliance and effort ∗
- ☐ Return here immediately if any of the following develop: a) unusual drowsiness and/or difficulty in awakening (awaken patient every 2-3 h during the first 24 hrs. after injury if so instructed) b) repeated vomiti convulsions (seizures) d) severe headache e) unequal pupils (one larg one small) f) staggering or problem with normal use of arms or legs.

### BACK AND NECK INJURIES

- ☐ Bed rest for the next _____ days.
- ☐ No heavy lifting for the next _____ days.
- ☐ Apply warm compresses to affected area for 30 minutes at least 4 tim day.
- ☐ Use cervical collar for the next _____ days or until improved.
- ☐ Use bed board or sleep on a firm surface.

### WORK AND SCHOOL INSTRUCTIONS

- ☐ Off work/school for the next _____ days or until you are re-checked.
- ☐ Light duty at work starting _____ for the next _____ days.
- ☐ No gym class or sports at school for the next _____ days or u you are rechecked.
- ☐ Special work restrictions: _____

### FOLLOW-UP CARE

- ☐ Go to your doctor for follow-up care in _____ days or _____ days if improvement. Call for an appointment.
- ☐ Return on _____ in the morning for x-rays/lat or recheck.
- ☐ Return to Emergency Dept. immediately if condition suddenly worsens fever, vomiting or increase pain, or no improvement in _____ hrs.
- ☐ Blood Pressure: During your examination in our Emergency Dept., yo Blood Pressure was found to be elevated. A single Blood Pressure d mination should not be used to make the diagnosis of Hypertension. recommend that you have your pressure re-checked by your persona physician and a decision made about the need for treatment.
- ☐ Refer to Dr. _____
  Office Address _____
  Specialty _____
  Telephone _____
- ☐ The x-rays taken while you were in the emergency room must go with to your appointment with the orthopedic surgeon. For your convenien you may expedite the process of obtaining your x-rays by calling 522 an hour or more before you plan on reporting to the Radiology office.

### IMMUNIZATIONS

- ☐ Received tetanus toxoid, DPT, DT, Human Anti-Toxin.
- ☐ Return in 2 months and 6 months to complete tetanus immunizations

Please review this information carefully. Please sign below to indicate you have received and understand this information.

_____ 2-15-9_ _____     AM/PM

R.N.'S SIGNATURE

## EVANGELICAL COMMUNITY HOSPITAL
### ONE HOSPITAL DRIVE, LEWISBURG, PA 17837
### DIAGNOSTIC RADIOLOGY

Name: THORNTON, DOUGLAS
Pt# : 3800874-E-ERM          MR# : 185032
DOB: 02/16/1957     Age: 042Y Sex: M
Order D&T: 02/16/1999 18:51:47
Sched D&T: 02/16/1999 18:51:47
Date Service Completed:  02/16/1999
Indication: FALL,NO FEELING ON LEFT SIDE

Requisition # : 3007474
Location: EMR-ER18
Adm Dr: LAPP,MD, FREDERICK
Ord Dr: DONEGAN,DO, MICHAE
CC Phy:
CC Phy:
CC Phy:

### *** Final Result ***

**CT SCAN HEAD UNENHANCED**

DOUGLAS THORNTON/ JOB # 2699/fsf

NONCONTRAST CAT SCAN OF THE BRAIN:

A series of 4 mm thick axial images were obtained through the posterior fossa
and the rest of the examination was performed with 10 mm thick contiguous
slices.  There are no prior studies for comparison.

The entire ventricular system is normal in size and position.  There is no
evidence of a midline shift.  There is no evidence of a mass, mass effect, CV
or acute intracranial hemorrhage.  The patient was unable to keep his head
straight in head holder.  This report was given to the Emergency Room
physician upon completion of the examination.

IMPRESSION: THERE IS NO EVIDENCE OF ACUTE INTRACRANIAL HEMORRHAGE OR CVA.  IF
SYMPTOMATOLOGY PERSISTS AND CLINICALLY INDICATED THAN I WOULD SUGGEST A FOLLO
UP EXAMINATION WITHOUT AND WITH CONTRAST AFTER 72 HOURS OF ACUTE NEUROLOGICAL
EVENT.

37461-118

RPP:RPP

02/17/1999 at 11:26:49

Electronically signed by:

**RASILA P PATEL,MD**

Anthony Bussanich, M.D.

02/17/1999 11:26:

**EVANGELICAL COMMUNITY HOSPITAL**
**ONE HOSPITAL DRIVE, LEWISBURG, PA 17837**
DIAGNOSTIC RADIOLOGY

Name: **THORNTON, DOUGLAS**                        Requisition # : 3007473
Pt# : 3800874-E-ERM          MR# : 185032         Location: EMR-ER18
DOB: 02/16/1957     Age: 042Y Sex: M              Adm Dr: LAPP,MD, FREDERICK
Order D&T: 02/16/1999 18:52:50                    Ord Dr: DONEGAN,DO, MICHAE
Sched D&T: 02/16/1999 18:52:50                    CC Phy:
Date Service Completed:  02/16/1999               CC Phy:
Indication: FALL,NO FEELING ON LEFT SIDE          CC Phy:

**\*\*\* Final Result \*\*\***

XR L.S.SPINE AP & LAT

DOUGLAS THORNTON/ JOB # 2698/fsf

LUMBAR SPINE:

Multiple lateral films, AP supine film and spot lateral views of the
lumbosacral junction were obtained.  There are no prior studies for compariso

The lumbar vertebrae are in good alignment.  The vertebral body height and
intervertebral disc spaces are well preserved.  There is no visible fracture
the films presented.  The bony detail is limited on AP view due to overlying
bowel gas.

IMPRESSION: THERE IS NO EVIDENCE OF FRACTURE ON THE FILMS PRESENTED.

37461-118

RPP:FSF                       Electronically signed by:

02/17/1999 at 11:07:17         **RASILA P PATEL,MD**          Anthony Bussanich, M.D.
                                                              02/17/1999 11:27

## MEDICAL REPORT OF DUTY STATUS

NAME: Thorton, Douglas

HOSPITAL REGISTRATION NO.: 37461-118

ADDRESS:

| | | | | |
|---|---|---|---|---|
| **INPATIENT** | INCLUSIVE DATES OF TREATMENT From: 2/16/99    2340 | | Through: 2/19/99 | |
| **OUTPATIENT** | DATE | TIME ARRIVED | A.M./P.M. | TIME DEPARTED    A.M./P.M. |
| **DISPOSITION** | Can resume usual occupation: | DATE | Can perform limited duties as specified under REMARKS | DATE |
| | To return to clinic | DATE | To be hospitalized | DATE |
| | OTHER (Specify) | | | |

REMARKS: Bottom Bunk
1st floor until re-evaluate

| NAME AND LOCATION OF HOSPITAL OR CLINIC | SIGNATURE OF MEDICAL OFFICER OR MEDICAL RECORD LIBRARIAN | DATE |
|---|---|---|
| USP Lewisburg | Merburg / H. Zerber RN | 2/16/99 |

IHS-131 (1/86)

---

## MEDICAL REPORT OF DUTY STATUS

NAME: Thorton, Douglas

ADDRESS:

HOSPITAL REGISTRATION NO.: 37461-118

| | | | | |
|---|---|---|---|---|
| **INPATIENT** | INCLUSIVE DATES OF TREATMENT From: 2/16/99    2340 | | Through: 2/19/99 | |
| **OUTPATIENT** | DATE | TIME ARRIVED | A.M./P.M. | TIME DEPARTED    A.M./P.M. |
| **DISPOSITION** | Can resume usual occupation: 2/20/99 | DATE | Can perform limited duties as specified under REMARKS | DATE |
| | To return to clinic | DATE | To be hospitalized | DATE |
| | OTHER (Specify) | | | |

REMARKS: Idle 3

| NAME AND LOCATION OF HOSPITAL OR CLINIC | SIGNATURE OF MEDICAL OFFICER OR MEDICAL RECORD LIBRARIAN | DATE |
|---|---|---|
| USP Lewisburg | Merburg / H. Zerber RN | 2/16/99 |

IHS-131 (1/86)

**MEDICAL REPORT OF DUTY STATUS**

| NAME | DOUGLAS THORNTON | HOSPITAL REGISTRATION NO. 97461-US |
| --- | --- | --- |
| ADDRESS | ABLOCK | |

| INPATIENT | INCLUSIVE DATES OF TREATMENT From: 2/18/99 | Through: 2/24/99 | TIME ARRIVED | TIME DEPARTED |
| --- | --- | --- | --- | --- |
| OUTPATIENT | DATE | | | |

| DISPOSITION | Can resume usual occupation: 2/25/99 | DATE | A.M./P.M. | Can perform limited duties as specified under REMARKS | DATE | A.M./P.M. |
| --- | --- | --- | --- | --- | --- | --- |
| | To return to clinic | DATE | | To be hospitalized | DATE | |
| | OTHER (Specify) | | | | | |

REMARKS    CONVALESCENCE X 1 week

| NAME AND LOCATION OF HOSPITAL OR CLINIC USP-LEW | SIGNATURE OF MEDICAL OFFICER Anthony Bussanich, M.D. Bussan MD | DATE 2/18/9 |
| --- | --- | --- |

IHS-131 (1/89)

---

**MEDICAL REPORT OF DUTY STATUS**

| NAME | DOUGLAS THORNTON | HOSPITAL REGISTRATION NO. 97461-18 |
| --- | --- | --- |
| ADDRESS | ABLOCK | |

| INPATIENT | INCLUSIVE DATES OF TREATMENT From: 2/18/99 | Through: 3/17/99 | TIME ARRIVED | TIME DEPARTED |
| --- | --- | --- | --- | --- |
| OUTPATIENT | DATE | | | |

| DISPOSITION | Can resume usual occupation | DATE | A.M./P.M. | Can perform limited duties as specified under REMARKS | DATE | A.M./P.M. |
| --- | --- | --- | --- | --- | --- | --- |
| | To return to clinic | DATE | | To be hospitalized | DATE | |
| | OTHER (Specify) | | | | | |

REMARKS    IF POSSIBLE, 1ST FLOOR CELL X 1 MONT

| NAME AND LOCATION OF HOSPITAL OR CLINIC USP-LEW | SIGNATURE OF MEDICAL OFFICER Anthony Bussanich, M.D. Bussan MD | DATE 2/18 |
| --- | --- | --- |

IHS-131 (1/89)



U.S. Department of Justice

Federal Bureau of Prisons

ATTN:   FOIA/PRIVACY OFFICE

_____

Douglas H. Thornton                      Washington. DC 20534
Register No. 37461-118                   For Further Inquiry Contact:
USP Lewisburg                            Federal Bureau of Prisons
                                         320 First Street, N.W.
                                         Room 738, HOLC Building
                                         Washington, DC  20534

Re:  Request No. 99-11940

Dear Mr. Thornton:

     This is in further reply to your August 6, 1999, Freedom of
Information request.  Specifically, you request information
regarding the metal detectors at the United States Penitentiary,
Lewisburg, Lewisburg, Pennsylvania.

     The Bureau of Prisons (Bureau) Office of Security Technology
(OST) section has advised this office that all metal detectors
used by the Bureau are regulated by 47, Code of Federal
Regulations (C.F.R.) part 15, and the Federal Communications Code
(FCC).    This office further indicates: the metal detectors level
of radiation which is governed by 47, C.F.R. and the FCC is
maintained at an innocuous level and the level of radiation is
preset at a safe level and cannot be increased.   Therefore, the
metal detectors pose no health problems to anyone who passes
through them.

     Pursuant to Title 28, Code of Federal Regulations, Section
16.9, this decision may be appealed to the Attorney General by
filing a written appeal within thirty days of the receipt of this
letter.  The appeal should be addressed to the Co-Director,
Office of Information and Privacy, U.S. Department of Justice,
Flag Building, Suite 570, Washington, D.C. 20534.   Both the
envelope and the letter of appeal itself must be clearly marked:
"Freedom of Information Act Appeal."

     We trust this information will be of assistance to you.

                              Sincerely,

                              _Katherine A. Day /DH_

                              Katherine A. Day
                              Chief, FOIA/PA Section



AUG 2 0

**U.S. Department of Justice**

Federal Bureau of Prisons

ATTN:   FOIA/PRIVACY OFFICE

_Washington, DC 20534_

Douglas H. Thornton
Register No. 37461-118
USP Lewisburg

For Further Inquiry Contact:
Federal Bureau of Prisons
320 First Street, N.W.
Room 738, HOLC Building
Washington, DC   20534

Re:   Request No. 99-11940

Dear Mr. Thornton:

　　　This is in further reply to your August 6, 1999, Freedom of
Information request.  Specifically, you request information
regarding the metal detectors at the United States Penitentiary,
Lewisburg, Lewisburg, Pennsylvania.

　　　The Bureau of Prisons (Bureau) Office of Security Technology
(OST) section has advised this office that all metal detectors
used by the Bureau are regulated by 47, Code of Federal
Regulations(C.F.R.) part 15, and the Federal Communications Code
(FCC).   This office further indicates: the metal detectors level
of radiation which is governed by 47, C.F.R. and the FCC is
maintained at an innocuous level and the level of radiation is
preset at a safe level and cannot be increased.  Therefore, the
metal detectors pose no health problems to anyone who passes
through them.

　　　Pursuant to Title 28, Code of Federal Regulations, Section
16.9, this decision may be appealed to the Attorney General by
filing a written appeal within thirty days of the receipt of this
letter.  The appeal should be addressed to the Co-Director,
Office of Information and Privacy, U.S. Department of Justice,
Flag Building, Suite 570, Washington, D.C. 20534.  Both the
envelope and the letter of appeal itself must be clearly marked:
"Freedom of Information Act Appeal."

　　　We trust this information will be of assistance to you.

Sincerely,

_Katherine A. Day/DH_

Katherine A. Day
Chief, FOIA/PA Section

· UNITED STATES GOVERNMENT

# Memorandum

Northeast Regional Office, Philadelphia, PA
FEDERAL BUREAU OF PRISONS

**DATE:** July 13, 1999

**REPLY TO**
**ATTN OF:** Henry J. Sadowski, Regional Counsel

**SUBJECT:** Your Administrative Tort Claim, No. T-BOP-99-29

**TO:** Douglas Thornton, Reg. No. 37461-118
USP Lewisburg


Your Administrative Tort Claim No. T-BOP-99-29, dated
February 17, 1999, and properly received by this agency on
March 15, 1999, has been considered for settlement as provided
by the Federal Tort Claims Act, 28 U.S.C. § 2672, under
authority delegated to me by 28 C.F.R. § 543.30.  You seek
damages in the amount of $5.00 for an alleged personal property
loss and $50,000.00 for an alleged personal injury.
Specifically, you claim you are experiencing pain as a result
of an injury you received when you fell from a chair that broke
in the Food Service Department at the United States
Penitentiary (USP) Lewisburg on February 16, 1999.
Additionally, you contend several items of property you had in
your possession at that time were lost by medical staff.

After careful review of this claim, I have decided not to offer
a settlement.  Our investigation revealed no evidence that any
negligence on the part of any Bureau of Prisons staff
contributed to the breaking of the chair.  You have been
provided medical care consistent with your condition and
commensurate with community standards.  Finally, any loss of
property was of a de minimis value.  There is no evidence you
have suffered a compensable injury or loss of property.

Accordingly, your claim is denied.  If you are dissatisfied
with this decision you may bring an action against the United
States in an appropriate United States District Court within
six (6) months of the date of this memorandum.

cc:  Donald Romine, Warden, USP Lewisburg
     File



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

---

*U.S. Custom House - 7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

April 5, 1999


Douglas Thornton
Register No. 37461-118
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

Re: Administrative Tort Claim Dated February 17, 1998
    Claim No. T-BOP-99-29

Dear Mr. Thornton:

This will acknowledge receipt by the agency on February 23, 1999, of
your administrative tort claim for an alleged personal injury at USP
Lewisburg, on or about February 16, 1999.

Under the provisions of the Federal Tort Claims Act, 28 U.S.C. 2675,
we have six months from the date of receipt to review, consider, and
adjudicate your claim. Accordingly, you may expect to hear from us on
or before August 22, 1999.

All correspondence regarding this claim should be addressed to me at:
Federal Bureau of Prisons, Northeast Regional Office, Room 801, US
Custom House, 2nd & Chestnut Street, Philadelphia, Pennsylvania
19106. If you have any questions about the status of your claim or if
the circumstances surrounding this claim change in any fashion, you
should contact me immediately. Also, should your address change, you
should advise me accordingly.

Sincerely,

D. Johnson
Henry J. Sadowski
Regional Counsel

cc: File



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*U.S. Custom House - 7th Floor*
*2nd & Chesnut Streets*
*Philadelphia, PA. 19106*

April 9, 1999

Douglas Thornton, Reg. No. 37461-118
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

RE:  Your Request for Information, Request No. 99-5649

Dear Mr. Thornton:

This is in response to your request, which was received in this
office on March 17, 1999, wherein you request a copy of certain
records.  You specifically request a copy of the incident report
dated Feburary 16, 1999, medical records, tests, treatment,
medication, doctors orders and all of your psychology records from
the United States Penitentiary (USP) Lewisburg, Pennsylvania.

In accordance with Bureau of Prisons Program Statement 1351.04
entitled, <u>Release of Information</u>, you may seek a local review of
the releasable portion of your medical file and central file by
contacting staff at your institution to make arrangements for
review in accordance with local review procedures.  Copies may be
reproduced locally.

In response to your request for all psychology records, twenty-one
(21) pages of records were received in this office for a
determination of their releasability to you.  Upon review, it has
been determined that all twenty-one pages are releasable to you,
and are enclosed herein.

I trust that we have been responsive to your request.

Sincerely,

Henry J. Sadowski
Regional Counsel

enclosures: 21 pages

cc: File

Response to Inmate Request to Staff

Inmate Name: Douglas Henry Thornton
Inmate Reg. No.: 37461-118
Quarters: SHU-334

In your Inmate Request to Staff, dated March 14, 1999, you alleged that one of our outside medical consultants had inflicted an injury to your body while conducting a neurological examination using a safety pin.

A review of your medical record indicates that after February 16, 1999, you have been examined and evaluated for a total of seven times by our staff clinicians. Your record also reveals during your consultations with our medical staff, you have never complained nor received treatment for injuries caused by puncture wounds. Furthermore, subsequent to February 16, 1999, there is no written documentation in your medical record showing evidence of past or present puncture wound anywhere on your body. The medical staff had informed me that a neurological examination is customarily and traditionally conducted using a pointed instrument to determine the integrity of your neurological system. If you think you need further medical care, please contact the floor physician assistant assigned in your unit.

I trust I have been responsive to your concerns.

_____               _____
Donald Romine, Warden                                              Date
USP Lewisburg



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville MD 20857

FEB - 8 2000

Douglas Henry Thornton
REG NO#37461-118- A-320
United States Penitentiary
P.O. Box 1000
Lewisburg, Pennsylvania 17837

Dear Mr. Thornton:

This is in response to your letter, dated January 3, addressed to the Food and Drug Administration (FDA) regarding any potential biological harm from walk-through metal detectors.

Emissions from metal detectors are supposed to meet standard C 95.1 on human exposure from the Institute for Electrical and Electronics Engineers (IEEE) or standard 0601.00 from the National Institute of Law Enforcement and Criminal Justice (NILECJ).

Both standards are based on levels below which the emissions have been shown to have no biological effect; in plain language, these standards for emissions are ten times BELOW the point where no biological effects are found. Therefore it is unlikely that your physical symptoms are caused from any radiation emitted from metal detectors.

I hope you find this information helpful.

Sincerely yours,

Jessica Auerbach
Writer-Editor
Consumer Section (HFZ-210)
Office of Health and Industry Programs
Center for Devices and Radiological Health



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*Northeast Regional Office*

---

*U.S. Custom House - 7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

September 8, 1999

Douglas Thornton
Reg. No. 37461-118
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

RE:  Your Request for Information, Request No. 99-11930

Dear Mr. Thornton:

This is in response to your request that was received in this office on August 12, 1999, wherein you request a copy of any accident reports or investigation reports regarding an accident that occurred on February 16, 1999, while you were working in Food Service at the United States Penitentiary (USP) Lewisburg, Pennsylvania.  You further request any medical documents regarding this accident.

In response to your request, forty (40) pages of records were received in this office for a determination of their releasability to you.  Upon review, it has been determined that all 40 pages are releasable to you in their entirety and are enclosed herein.

I trust that we have been responsive to your request.

Sincerely,

Henry J. Sadowski
Regional Counsel

enclosures: 40 pages

cc: File

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

P.S. 580
February 11,
Attachment A, Pa

## PROGRESS REPORT

USP, Lewisburg, Pennsylvania
**INSTITUTION**

**DATE:** May 16, 2000

Inmate Reviewed:

_Inmate Refused to sign_    5-17-00

| Inmate's Signature | Date | Staff Signature |

---

**1. Type of Progress Report:**

Initial:_____    Statutory Interim:_____    Pre-Release:_____

Transfer:____X____    Triennial:_____    Other (specify):_____

---

| 2. Name | 3. Register Number | 4. Age (DOB) |
|---|---|---|
| THORNTON, Douglas | 37461-118 | 42  (12-16-57) |

**5. Present Security/Custody Level:** High/Maximum

**6. Offense/Violator Offense:** Mandatory Release Violator (Original Sentence: Bank Robbery, Aiding and Abetting, Conveying a Weapon in a Federal Correctional Institution, and Forcibly Assaulting a Correctional Officer With a Dangerous Weapon)

**7. Sentence:** Original Sentence - 25 year 4205(a) Regular Adult Term; Five years, six months, 16 day remaining

| 8. Sentence Began | 9. Months Served + Jail Credit | 10. Days GCT/or EGT/SGT |
|---|---|---|
| 03-18-98 | 26 months + 0 days JTC | 259 days SGT |

| 11. Days FSGT/WSGT/DGCT | 12. Projected Release | 13. Last USPC Action |
|---|---|---|
| 0 days FSGT<br>0 days WSGT | November 27, 2001, via Two Thirds | Notice of Action dated October 09, 1998 - Revol Mandatory Release; Continue to Expiration; Statutory Interim Hearing in September of 2000 |

---

**14. Detainers/Pending Charges:** None

**15. Codefendants:** None

Distribution:    Inmate File
                 U.S. Probation Office
                 Parole Commission Regional Office (If applicable)
                 Inmate

BP-CLASS

COPY

1

# INSTITUTIONAL ADJUSTMENT

Inmate Douglas Thornton was committed at USP, Lewisburg, Pennsylvania, on November 03, 1998, as a Mandatory Release Violator.

**Program Plan:**  At his initial and subsequent program reviews, his Unit Team recommended his participation in the literacy program, correctional counseling, vocational training, and the Pre-Release Preparation Program.

**Work Assignments:**  Inmate Thornton was initially assigned to the Food Service Department at USP, Lewisburg, on November 21, 1998. He was reassigned to the Mechanical Services Department on March 19, 1999, and worked in the Carpenter Shop, and Paint Shop, until his placement in Administrative Detention on March 03, 2000.   He received satisfactory work performance evaluations in these assignments.

**Educational/Vocational Participation:**  Inmate Thornton has not participated in any educational programs during this period of incarceration.  Records indicate that he has not obtained a General Equivalency Diploma to date.  Additionally, he has participated in the Pre-Release Preparation Program, but has not completed it.

**Counseling Programs:**  Inmate Thornton receives correctional counseling on an as needed basis.

**Incident Reports:**  Inmate Thornton has incurred the following disciplinary infractions during this period of incarceration:

```
----------------------------------------------------------------------
REPORT NUMBER/STATUS.: 775538 - SANCTIONED  INCIDENT DATE/TIME: 04-25-2000 0945
DHO HEARING DATE/TIME: 05-09-2000 1320
FACL/CHAIRPERSON.....: LEW/EMORY D
REPORT REMARKS.......: DENIED
  203  THREATENING BODILY HARM - FREQ: 1 ATI: SN1
    DS      / 30 DAYS / CS
    COMP:   LAW:
    FF SGT   / 60 DAYS / CS
    COMP:020 LAW:O
    LP PHONE  7 90 DAYS / CS
    COMP:   LAW:
    TRANSFER   / CS
    COMP:   LAW:
```



---

REPORT NUMBER/STATUS.: 772556 - SANCTIONED  INCIDENT DATE/TIME: 03-01-2000 1200
DHO HEARING DATE/TIME: 05-09-2000 1315
FACL/CHAIRPERSON.....: LEW/EMORY D
REPORT REMARKS.......: DENIED
   201  FIGHTING WITH ANOTHER PERSON - FREQ: 1
      DS       / 30 DAYS / CS
      COMP:   LAW:
      FF SGT   / 60 DAYS / CS
      COMP:020 LAW:O
      TRANSFER   / CS
      COMP:    LAW:

**Institution Movement:**  Inmate Douglas Thornton was committed at USP, Lewisburg, Pennsylvania, on November 03, 1998, as a Mandatory Release Violator.  He has remained at this facility to date.

**Physical/Mental Health:**  Inmate Thornton has been assigned to regular duty status with a special diet restriction.  There are no medical concerns which would preclude his transfer.

**Progress on Financial Plan:**  There were no court ordered financial obligations imposed in this case.

## RELEASE PLANNING

Release notifications are required under Title 18 U.S.C. 4042(b) in this case.  Inmate Thornton should be considered fully employable upon release.  He has not formulated a release plan to date.

**Residence:**          Pending

**Employment:**        Pending

**USPO:**               Mr. David E. Johnson, Chief
                        United States Probation Office
                        District of Maryland
                        250 West Pratt Street, Suite 400
                        Baltimore, MD   21201


**Dictated by:**        A. G. Giordani, Case Manager, Unit One

**Date Typed:**         May 16, 2000

**Reviewed by:**        D. A. White, Unit One Manager

COPY

establish

Ascertain        discuss

Falsify

Douglas H. Thornton
Reg N# 37461-118  Edu. 285.
USP Lewisburg Pa 17837

Date June        200_

To Doctor Salam. MD.
Health Service Dept
USP Lewisburg Pa.

Subject; blood withdrawn by D. Rosentre radiologist.

Re;

On or about June.   2000, at 6.45 Am. Radiologist
D. Rosentre. Case # _____ 285. Disciplinary Segregation
withdraw some blood from me. I ask Mr Rosentre _____
he see my name tag. I stated to him that until I _____
on your medical staff. His withdrawing blood from my _____
time. I ask him by consent the _____ and blood _____
being withdrawn from me be use for what _____
_____ told that he _____ had to _____ withdraw it from me.
_____ to see the Special hypatative basis by _____
_____ _____ _____ _____ blood _____
_____ _____ This _____ _____ Force
_____ should face _____ _____ _____ the _____
syringes at my _____ _____ explain

Fraudulent _____ _____ _____
example _____