Thornton v Romine No#:CV-00-1255

Douglas Henry- Thornton
Reg No# 37461-118-1A-120
United State Penitentiary Allenwood
P.O. Box 3500
White Deer Pennsylvania 17887

Date August 20, 2000

To: Mary E. D'Andrea
    Clerk of Court
United States District Court for the
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 983
Harrisburg, Pennsylvania 17108

J. Kawe
PLC-Schimelfenig

**FILED**
HARRISBURG, PA
AUG 2 2 2000
MARY E. D'ANDREA, CLERK
Per _____

Dear Clerk.

I have at this time a Civil Rights Complaint Befor this Court See: Thornton V. D. Romine, Warden, CV- No# 1:CV-00-1255. Filed July 18, 2000, I which to File a Supplement Complaint to Civil Complaint thats already before this Court. I was assaulted by two inmates on March 3, 2000 while eating my morning meal and assaulte by staff later whit my feet and hands was Cuffed to a bed. Staff member at USP-Lewisburg has filed untrue report etc. against me. I have cuts in my head where I was hit in my head with Keys. I Video surveillance Cameras will show that I did not at any time assaulted any one but I was assaulted and beaten. My medical files been fix where they dont show anything Not ever the fact that I have third degrees burns ore 65 per Cent of my body etc. Please send me the necessary form to file a Supplement or a new complaint against our defendant.

Respectfully Request

**DISCIPLINE HEARING OFFICER REPORT**  BP-S305.052 MAY 94
**U.S. DEPARTMENT OF JUSTICE**  **FEDERAL BUREAU OF PRISONS**

| INSTITUTION | USP, Lewisburg | INCIDENT REPORT NUMBER | | 772556 |
|---|---|---|---|---|
| INMATE NAME | THORNTON, Douglas | REG NO  37461-118 | UNIT | 1 |
| DATE OF INCIDENT | 3-3-00 | DATE OF INCIDENT REPORT | | 4-14-00 |
| OFFENSE CODE(S) | 201 | | | |
| SUMMARY OF CHARGES | Fighting | | | |

**I. NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) 4-14-00 at (time) 1845 (by staff member) L. Bledsoe

B. The DHO Hearing was held on (date) 5-9-00 at (time) 1315

C. The inmate was advised of his/her rights before the DHO by (staff member):
P. Yakubick on (date) 4-16-00 and a copy of the advisement of rights form is attached.

**II. STAFF REPRESENTATIVE**

| A. Inmate waived right to staff representative. | Yes: | | No: | X |
|---|---|---|---|---|

B. Inmate requested staff representative and N/A appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: N/A

| D. Staff representative | D. Byerly | was appointed. |
|---|---|---|

E. Staff representative statement:

Mr. Byerly indicated the inmate presented a written statement which he wants considered in both cases. Mr. Byerly indicated the inmate requests the DHO to consider the fact he was taking a medication at the times of the incidents and consider his handwritten statement in both cases. The inmate made no other request of him.

**III. PRESENTATION OF EVIDENCE**

| A. Inmate admits | X | denies | | the charge(s). |
|---|---|---|---|---|

B. Summary of inmate statement:

The inmate indicated he understood his rights and was ready to proceed with the hearing. He had one document for the DHO to consider. The inmate testified he had medication for a bladder infection. He doesn't know, but it could have caused hallucinations. I asked the inmate why the other inmates would provide testimony against their self-interest. Specifically, that they engaged him (Thornton) in a fight that was unwitnessed by staff. He indicated he didn't know, other than maybe they were trying to get him in trouble because they were doing Life sentences and recently lost appeals. I asked him if his defense was that he was hallucinating at the time, did he have any recollections of any hallucinations. I asked him if he had any recollections of blackouts or any other mental thought disruptions of his thought process. He indicated no. I asked him if either Taylor or Vieux worked in his job area. He indicated that Taylor did. I again asked him why they would admit to involvement in an altercation with him when staff didn't know about it which is clearly against their self-interest of it didn't occur.

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

BP-S305.052 MAY 94
**FEDERAL BUREAU OF PRISONS**

| | | | | | | |
|---|---|---|---|---|---|---|
| He was unable to provide any clear answers. I read and considered his documentary evidence during the case. The inmate made no complaints of procedural errors during the hearing. | | | | | | |
| C. Witness(es): | | | | | | |
| 1. The inmate requested witness(es). | | Yes: | X | No: | | |
| 2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.) | | | | | | |
| | | | | | | |
| 3. The following persons requested were not called for the reason(s) given. | | | | | | |
| N/A | | | | | | |
| 4. Unavailable witnesses were requested to submit written | | Yes | | No | N/A | X |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

Memo of Morin dated 4-14-00; Memoranda of Lindsay, Cope, Sniezek, Densberger, Preisch, Peterson, Sola, Recla and Rothermel dated 3-3-00; Injury assessment forms; Photographs; Video surveillance photographs; Handwritten statement of Inmate Thornton

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

**IV. FINDINGS OF THE DHO**

| X | A. The act was committed as charged. |
|---|---|
| | B. The following act was committed: |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)**

The DHO finds Thornton guilty of the offense of Fighting. This decision is based upon the written account of the reporting officer which indicates at 1:30 p.m. on 4-14-00, an SIS investigation concluded that on 3-1-00 at approximately 12:00 p.m., while in the Mechanical Services area, Inmates Gregory Taylor #18115-018 and Thornton were involved in a fight. This conclusion is based upon Taylor and Thornton's self-admission to fighting during an SIS investigation.

Also relied upon by the DHO are the documents listed in the Documentary Evidence Section which support and corroborate the reporting officer's account of the incident. Also relied upon by the DHO are the documents supplied by the inmate. One document does not pertain to this case. The other applies to this case and indicates that the inmate claims he did not get a detention order when placed in the Special Housing Unit. Considering arguendo that this is true, the inmate has not represented how this would have impacted his ability to present a defense in this case. He indicates he never confessed to being involved in a fight with anyone on 3-1-00. He again raises the defense of being on medication which he believes could have caused hallucinations. I have considered the documentation provided regarding the medication the inmate was taking and the fact that he was on the medication beginning on 3-1-00. However, the

**DISCIPLINE HEARING OFFICER REPORT**  BP-S305.052 MAY 94
**U.S. DEPARTMENT OF JUSTICE**  **FEDERAL BUREAU OF PRISONS**

> Pharmacist, Mr. Cozza, has indicated that while hallucinations could occur, it would be extremely rare, perhaps one in a million. I questioned the inmate regarding any knowledge of having any knowledge of any hallucinations, blackouts or any other disruptive mental thoughts, and the inmate claims not to have had any.
>
> A review of the documentation in this case reveals that on March 3, 2000, at approximately 6:45 a.m, while serving the breakfast meal, staff observed Thornton, Taylor and Vieux engaged in a physical altercation. Assistance was called and responding staff attempted to separate the three inmates. While staff were attempting to separate and restrain the inmates, Thornton became combative by physically struggling and resisting staff who were attempting to restrain him. At that point it became necessary for staff to carry Thornton to the Special Housing Unit. Subsequently, Thornton was placed in four point hard restraints due to his combative behavior.
>
> Inmate Thornton was examined and treated for small cuts on his forehead, left hand and lower lip area. Inmate Vieux was escorted to the Health Services Unit and treated for a small cut on his left wrist. Inmate Taylor was examined and no injuries were noted. Inmates Taylor and Vieux were subsequently placed in the Special Housing Unit.
>
> During the incident, Associate Warden Sniezek and Associate Warden Lindsey were injured while attempting to separate the inmates. Associate Warden Lindsey was examined and treated for a broken left index finger and Associate Warden Sniezek was treated for a contusion and tenderness to the left side of his chest area.
>
> On 3/3/00 at approximately 7:10 a.m., an interview was conducted by Lieutenant Peterson in the confines of the Special Housing Unit with Inmate Taylor. Taylor stated that he had the right to remain silent and that he was going to exercise that right.
>
> On 3/3/00 at approximately 7:30 a.m., an interview was conducted by Lieutenant Peterson in the Urgent Care Room with Inmate Vieux. Vieux stated that he and Taylor are co-defendants and the fight had something to do with homosexual activity.
>
> On 3/3/00 at approximately 7:40 a.m., an interview was conducted by Lieutenant Peterson in the Special Housing Unit Holding cell with Thornton. Thornton stated he had been sitting at his usual table in Food Service by himself when two inmates (Vieux and Taylor) had come up to him and had told him to "check in." Thornton stated the two inmates had started punching him and that he also had punched Vieux and Taylor during the fight. Thornton stated he did not owe any money and that he did not "mess" with drugs. Thornton also stated the two inmates "attacked" him probably because they had wanted to get him locked up. Thornton was asked by Lieutenant Peterson if the incident was over homosexual activities, at which time Thornton refused to answer the question.
>
> A review of the video camera surveillance photos of the dining hall dated 3/3/00, revealed that inmate Douglas Thornton had been involved in a fight with Vieux and Taylor. Upon a thorough review of the video surveillance cameras of the dining hall dated 3/3/00, it was determined that at 6:43:35 a.m., inmate Thornton was observed sitting in the dining room eating breakfast. At 6:43:46 a.m., Taylor had approached the table where Thornton was seated and remained standing on the opposite side (left side) of the table. At 6:43:52 a.m., Vieux had also approached the table where inmate Thornton was seated and he remained standing beside Taylor. At 6:44:37 a.m., Taylor was observed walking around to the other side of the table where inmate Thornton was seated and inmate Vieux remained standing to the left side of Thornton. At 6:44:38 a.m., Taylor and Vieux were observed punching Thornton. At 6:44:40 a.m., Mr. Sniezak and Mr. Lindsey were observed responding to the fight. At 6:44:41 a.m., staff were observed attempting to breakup the fight. At 6:44:44 a.m., additional staff were observed arriving to assist in breaking up the fight and gaining control of the inmates involved. At 6:45:00 a.m., the inmates were separated and staff had regained control of the situation
>
> On 3/3/00, a memorandum submitted by Associate Warden Lindsey indicated that he was

| DISCIPLINE HEARING OFFICER REPORT | BP-S305.052 MAY 94 |
|---|---|
| U.S. DEPARTMENT OF JUSTICE | FEDERAL BUREAU OF PRISONS |

standing near the entrance doors of the dining hall when the incident occurred. Associate Warden Lindsey stated that while he attempted to separate the inmates, he had to use immediate force in an attempt to subdue the inmates. While Vieux and Thornton were pinned to the ground underneath him, Thornton had continued to struggle whereas Vieux had not struggled. While he was attempting to gain control of Thornton, he felt a "shooting pain" in his left forefinger.

On 3/3/00, mass interviews were conducted in A-Block, B-Block, C-Block and D-Block. Information received through mass interviews revealed that inmate Thornton was a homosexual, had been had been badgering Taylor for sex and that Thornton and Taylor had been involved in a fight in the Mechanical Services area on 3/1/00. Inmates interviewed also expressed a strong dissatisfaction toward Thornton's homosexual activities.

On 3/17/00 at approximately 8:30 a.m., an interview was conducted in the conference room of the Special Housing Unit with Vieux. Vieux was advised the investigation was being conducted regarding the fight which had occurred in the dining hall on 3/3/00. Vieux stated that Thornton was out of line and that he (Thornton) was a threat to Taylor. Vieux also stated that Taylor was his co-defendant.

On 3/17/00 at approximately 8:40 a.m., an interview was conducted in the confines of the conference room of the Special Housing Unit with Taylor. Taylor was advised that the investigation was being conducted regarding the fight which had occurred in the dining hall on 3/3/00. Taylor stated that on 3/1/00, after he had returned from lunch to the Mechanical Services area, Thornton had approached him (Taylor). The conversation was referencing the fact that Thornton had made Taylor feel uncomfortable when they were around each other. Thornton had then punched Taylor and then Taylor had punched Thornton. Taylor stated, "Yeah, we got into a fight and I told Thornton that he needed to check in and get off the compound." Taylor stated that right after the fight, the institution had been placed into lockdown, was due to a separate incident. Taylor stated that when the institution opened back up on 3/3/00, he had gone to the dining hall and had seen Thornton seated in the dining hall. Taylor stated that he had approached Thornton in the dining hall and had told him to "check in and get off the compound." Thornton had then told Taylor to, "make me check in."

On 3/17/00 at approximately 9:00 a.m., an interview was conducted in the conference room of the Special Housing Unit with inmate Douglas Thornton. Thornton was advised that the investigation was being conducting regarding the fight which had occurred on 3/3/00 in the dining hall. Thornton stated that both he and Taylor had some words on the afternoon of 3/1/00 in the Mechanical Services area. Thornton stated Taylor had called him a "rat" because he (Thornton) had talked to the Regional Office people that had been here at U.S.P. Lewisburg. Taylor had also told Thornton that he (Thornton) was "soft" for wanting to enroll in the CODE Program. Thornton stated that right after that conversation, he and Taylor had gotten in a fight.

On 3/3/00, inmate Douglas Thornton was examined by the on-duty Physician Assistant and was treated for small cuts on his forehead, left hand and lower lip.

On 3/3/00, Vieux was examined by the on-duty Physician Assistant and was treated for a small cut on his left wrist.

On 3/3/00, Taylor was examined by the on-duty Nurse and found to have sustained no injuries.

On 3/3/00, Associate Warden Sniezek was examined by the on-duty Doctor and was treated for a contusion and tenderness to the left side of his chest area.

On 3/3/00, Associate Warden Lindsey was examined by the on-duty Doctor and was treated for a broken left index finger.

On 3/1/00 at approximately 1:00 p.m., an incident occurred on H-Block which involved

| DISCIPLINE HEARING OFFICER REPORT | BP-S305.052 MAY 94 |
|---|---|
| U.S. DEPARTMENT OF JUSTICE | FEDERAL BUREAU OF PRISONS |

inmates from H-Block and D-Block. All inmates involved in the incident had a Security Threat Group Assignment of "Bloods." All inmates were recalled and the institution was placed into "lockdown" status immediately after the institution. Mass interviews were conducted and the institution remained under "lockdown" status until the morning of 3/3/00, at which time the institution resumed normal operation during the feeding of the breakfast meal. This had been the first opportunity for inmate Taylor and inmate Thornton to have encountered each other since the incident in Mechanical Services on 3/1/00.

A review of the facts in this case reveals that the fight did occur in Mechanical Services area on 3-1-00 between Taylor and Thornton. Specifically, Taylor has made an admission against self-interest which caused him to get another incident report for the 3-1-00 incident which staff were unaware of before his admission. Credence is given to this position based upon interviews taken from the general population subsequent to the altercation in Food Service on 3-3-00, indicating there was a physical altercation between Thornton and Taylor on 3-1-00 which went undetected by staff. Thornton has remained uncooperative throughout the investigation, refusing to accept any responsibility for any misconduct in this case. I disbelieve his assertion that he was not involved in a fight on 3-1-00. Again, Inmate Taylor has made admission against self-interest which have caused him to be disciplined. I do not think he would do this on a lark. I do not believe Inmate Thornton's position that the medication he was taking caused him to have hallucinations, and therefore was unable to know whether or not he had an altercation. He readily admitted during a re-interview on 3-17-00 that he did have words on 3-1-00 with Taylor in the Mechanical Services department, thereby providing opportunity for a fight to occur. Credence is further given to this position as Taylor and Vieux assaulted Thornton two days later in the dining room in plain view of staff in retaliation for the 3-1-00 incident. All these factors together corroborate the fact that Thornton and Taylor had an altercation on 3-1-00. The manner in which Taylor and Vieux assaulted Thornton tells the DHO two specific things. One, it was a retaliatory act and two, they did it in a manner in front of staff so the situation would not get so far out of hand that someone would be seriously hurt. The DHO notes one procedural defect on the incident report in that the place of the incident in Block 6 is erroneously stated as the dining hall. However, the body of the incident report is clear that the altercation occurred in Mechanical Services. It is clear that the inmate is aware of this based upon his own documentation which he submitted. The inmate testified before the DHO that he was clearly aware that the place of the incident was Mechanical Services. Accordingly, I do not find this error to be prejudicial. The greater weight of the evidence supports the finding that Thornton was involved in a fight with Taylor on 3-1-00 in the Mechanical Services area.

**VI. SANCTION OR ACTION TAKEN**

CODE: 201

Forfeit Statutory Good Time: 60 days
Disciplinary Segregation: 30 days
Disciplinary Transfer
Loss of Commissary Privilege: 90 days

**VII. REASON FOR SANCTION OR ACTION TAKEN**

The rationale for the sanctions imposed in this case is to punish the inmate for his misconduct which is viewed as having an adverse affect on the security and good order of the institution. I believe that stringent sanctions, to include the loss of privilege, are the only viable sanctions which are significant enough to curb the inmate's future misconduct. No other sanctions are seen to be effective enough to facilitate this task.

| DISCIPLINE HEARING OFFICER REPORT | BP-S305.052 MAY 94 |
| U.S. DEPARTMENT OF JUSTICE | FEDERAL BUREAU OF PRISONS |

VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

| | Yes | X | No | |

IX. DISCIPLINE HEARING OFFICER

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| D. Emory | | 5-16-00 |

| Report delivered to inmate by: | DATE | TIME |
|---|---|---|
| M. Lynch | 5/22/00 | |

(This form may be replicated in WP)    Replaces BP-304(52) of JAN 88